[No. A081330. First Dist., Div. Four. Nov. 3, 1999.]

AL DESCHENE, Plaintiff and Appellant, v.
PINOLE POINT STEEL COMPANY, Defendant and Respondent.

COUNSEL

Vincent M. Spohn for Plaintiff and Appellant.

Thelen, Reid & Priest, Charles S. Birenbaum, Karen L. Mathes and Robert Spagat for Defendant and Respondent.

OPINION

POCHÉ, J.—Plaintiff, Al Deschene, appeals from a judgment entered in favor of defendant, Pinole Point Steel Company (hereafter PPS), his former employer, after PPS prevailed on its motion for summary judgment. Deschene appeals from the judgment contending that the trial court erred in granting summary judgment to PPS and in denying his motion for new trial.[1]

### Background

Deschene filed a complaint on June 27, 1996, seeking damages for wrongful termination on theories of breach of contract and of the covenant of good faith and fair dealing as well as termination violative of public policy and of statutory prohibitions against discrimination on the basis of medical condition and as retaliation for giving testimony in a deposition. Deschene alleged that he began his employment with PPS on March 18, 1980. On March 24, 1995, he gave deposition testimony in a lawsuit brought by a former employee of PPS, Jerald Gatton, for injuries Gatton contended were a result of asbestos exposure. (*Gatton* v. *Raybestos-Manhattan, Inc.,* (Oct. 20, 1997) A073577 [nonpub. opn.].)[2]

It was undisputed that Deschene was fired by PPS in late June 1995. In the course of that year he received three reprimands. On April 18, 1995, he received a reprimand for allegedly violating attendance policy. On April 27, 1995, he received a reprimand for what was characterized as "carelessness, loss of material and failure to follow instructions." Deschene conceded that he failed on that day to follow instructions from his supervisor Jim Moyles to "close the snubber rolls," which resulted in a shutdown on the production line.

In a termination reprimand dated June 26, 1995, Deschene was said to have committed two "recent incidents of misconduct and insubordination

---

[1] An order denying a new trial is not directly appealable, but is reviewable on appeal from the underlying judgment. (Code Civ. Proc., § 904.1; *Zavala* v. *Arce* (1997) 58 Cal.App.4th 915, 924, fn. 7 [68 Cal.Rptr.2d 571].)

[2] That came before this court on appeal (*Gatton* v. *Raybestos-Manhattan, Inc., supra,* A073577) and on our own motion we take judicial notice of our unpublished decision of October 20, 1997. (Evid. Code, § 452, subd. (d)(1).)

directed at his immediate supervisor, Jim Moyles, the foreman. . . . The first event occurred on May 12, 1995[,] when Mr. Moyles attempted to counsel Mr. Deschene on performance deficiencies. Mr. Deschene blew up at Mr. Moyles and angrily yelled that Moyles was a 'spineless, gutless faggot.' . . . [O]n June 20, 1995, Mr. Deschene became uncontrollable with his supervisor. For no legitimate reason, Mr. Deschene left his work station and intercepted Mr. Moyles on the shop floor. . . . Mr. Deschene was angry and agitated. At one point, [he] . . . . shook his finger in Mr. Moyles' face in a threatening manner. Mr. Moyles instructed Mr. Deschene to return to work, and Deschene refused. Mr. Moyles warned Deschene to be careful of what he said. Ignoring both the instruction to return to work and the warning, Deschene said to Moyles, 'You cocksucker.' "

Deschene denied that he "blew up" at Moyles on May 12 and that he called his supervisor a "spineless, gutless faggot." Characterizing defendant's version of events on June 20 as a "complete fabrication," Deschene denied he had ever left his work station, or been told to return to work, or that he had called Moyles a "cocksucker."

It was further undisputed that Deschene, who was a member of the International Association of Machinists and Aerospace Workers and subject to a collective bargaining agreement (CBA), grieved his termination reprimand on the basis that he was fired because of his health and age in violation of nondiscrimination provisions contained within the CBA. The matter was eventually set for arbitration to begin in mid-May of 1996, but plaintiff withdrew his request for arbitration on May 10.

*Discussion*

A motion for summary judgment must be granted when all the papers submitted by the moving party establish there are no triable issues of material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Scheiding* v. *Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 69 [81 Cal.Rptr.2d 360].) If the moving party demonstrates either that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to that cause of action, the moving party has met his burden to show the cause of action has no merit. (Code Civ. Proc., § 437c, subd. (n)(1).) The burden then shifts to the plaintiff to demonstrate a triable issue of fact exists either as to the cause of action or as to the defense. (Code Civ. Proc., § 437c, subd. (o)(2).) The plaintiff may not rely on the allegations or denials in his pleadings, but must instead set forth the specific facts which show that there is a triable issue of material fact either as to the cause of action or to the defense. (*Ibid.*; *Parsons* v. *Crown Disposal Co.* (1997) 15 Cal.4th 456, 464 & fn. 4 [63 Cal.Rptr.2d 291, 936 P.2d 70].)

■ On appeal we apply the same principles; however, as an appellate court we conduct an independent review of the trial court's resolution of questions of law. (*Green* v. *Ralee Engineering Co.* (1998) 19 Cal.4th 66, 72 [78 Cal.Rptr.2d 16, 960 P.2d 1046].) Because our review is de novo if summary judgment was proper, even if granted for an incorrect reason, we affirm. (*Barkley* v. *City of Blue Lake* (1996) 47 Cal.App.4th 309, 313 [54 Cal.Rptr.2d 679].)

The trial court's order granting summary judgment filed on December 30, 1997, concluded that Deschene had "failed to dispute that all of the causes of action alleged in the complaint are governed by a collective bargaining agreement, and are therefore preempted by section 301 of the Labor-Management Relations Act, 29 U.S.C. 185." It further found that Deschene had "failed to dispute that his termination was not in violation of public policy arising out of the Gatton testimony and his medical condition."

### Preemption by Federal Statute

Section 301(a) of the Labor Management Relations Act (LMRA) provides in pertinent part: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (29 U.S.C. § 185(a).)

In order to ensure that the terms in CBA's will be construed to have the same meaning under state and federal law and from state to state, the section has been held to require that federal law preempts state law with respect to the interpretation of the terms of a CBA. (*Teamsters Local* v. *Lucas Flour Co.* (1962) 369 U.S. 95, 103-104 [82 S.Ct. 571, 576-577, 7 L.Ed.2d 593] [whether the terms of a CBA implicitly prohibited a strike]; *Allis-Chalmers Corp.* v. *Lueck* (1985) 471 U.S. 202, 218 [105 S.Ct. 1904, 1914-1915, 85 L.Ed.2d 206] [state remedy for bad faith handling of disability benefits preempted because the duty which was allegedly breached would require interpreting the term of the CBA relating to handling of disability benefit claims].)

The limits of section 301 of the LMRA preemption were set out in *Lingle* v. *Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399 [108 S.Ct. 1877, 100 L.Ed.2d 410]. In that case an employee subject to a CBA claiming injury filed a claim for workers' compensation; the company, maintaining her claim was false, terminated her employment. (At p. 401 [108 S.Ct. at p. 1879].) The employee sued the company alleging retaliatory discharge for

having availed herself of her worker's compensation rights under Illinois law. (*Id.* at p. 402 [108 S.Ct. at p. 1879].) The federal district court dismissed her claim on the basis that it was inextricably linked with the provisions of the CBA and to allow it to proceed would interfere with the provisions in the CBA calling for arbitration of grievances for "any dispute" between an employer and employee. (*Ibid.*) The court was emphatic that "interpretation of collective-bargaining agreements remains firmly in the arbitral realm; judges can determine questions of state law involving labor-management relations only if such questions do not require construing collective-bargaining agreements." (*Id.* at p. 411 [108 S.Ct. at p. 1884], fn. omitted.)

However, the court concluded that in this instance the state law claim raised by the employee, was not preempted. It looked at the elements of a claim for retaliatory discharge in Illinois: (1) a discharge; and, (2) the employer's motive to deter an employee's exercise of statutorily granted workers' compensation rights. The defense to such a claim is for the employer to show it had a nondiscriminatory motive for the firing. Each of the elements and the defense involved purely factual questions and therefore could be resolved without requiring a court to interpret any term in the CBA. (*Lingle* v. *Norge Division of Magic Chef, Inc., supra,* 486 U.S. at p. 407 [108 S.Ct. at p. 1882].) Therefore the state law remedy was independent of the CBA for the purposes of preemption by section 301 of the LMRA. (*Lingle,* at p. 407.)

In reaching this result the court expressly rejected the reasoning of the district court which had concluded that any claim of retaliatory discharge would entail inquiry into the "just cause for termination" provision of the CBA which was an issue for arbitration. (*Lingle* v. *Norge Division of Magic Chef, Inc., supra,* 486 U.S. at p. 408 [108 S.Ct. at pp. 1882-1883].) The district court had found that such an inquiry " 'implicates the *same analysis of the facts* as would an inquiry under the just cause provisions' " of the CBA. (*Ibid.*) Agreeing that there would indeed be a common set of facts involved in both an arbitration and in the judicial action the court still found that circumstance insufficient to trigger preemption. Indeed, the court noted "that the mere fact that a broad contractual protection against discrimina-tory—or retaliatory—discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state-law violation dependent upon the terms of the private contract." (*Id.* at pp. 412-413 [108 S.Ct. at p. 1885].) The trigger for section 301 of the LMRA preemption is whether the application of state law requires contrac-tual interpretation of the terms in a CBA.

To determine whether a state claim will be preempted by section 301 of the LMRA because it would require interpretation of the CBA we look to

the elements of the claim, the terms of the agreement, the facts which plaintiff believes support the cause of action and those the defendant may assert in his defense. (*Moreau* v. *San Diego Transit Corp.* (1989) 210 Cal.App.3d 614, 624 [258 Cal.Rptr. 647].)

Deschene concedes here as he did below that his first two causes of action—that for breach of contract and that for breach of the implied contractual covenant of good faith and fair dealing would require interpretation of the CBA and therefore are preempted by section 301 of the LMRA.[3] As to his third cause of action—termination in violation of public policy—and his fourth—discrimination based upon his health and his testimony in *Gatton*—it is these causes of action which he contends are not preempted.

### a. *Termination for Testimony*

Deschene alleged that he was discriminated against by his employer who terminated his employment "in retaliation for engaging in protected activity"—namely his testimony adverse to his employer in *Gatton* v. *Raybestos-Manhattan, Inc., supra*, A073577. (*Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1086-1087 [4 Cal.Rptr.2d 874, 824 P.2d 680] [claim for wrongful discharge may arise for employee who gives truthful testimony].) In opposing summary judgment Deschene argued that firing him in retaliation for his deposition and in-court testimony was contrary to the public policy expressed in Labor Code section 230, subdivision (b). That section provides in pertinent part: "No employer shall discharge or . . . discriminate against an employee for taking time off to appear in court as a witness . . . if such employee, prior to taking such time off, gives reasonable notice to the employer . . . ." (*Ibid.*)[4]

Looking at the statutory scheme we conclude the elements of a claim of wrongful discharge under Labor Code, section 230, subdivisions (b) and (c) are: (1) discharge of, or discrimination in the terms and conditions of employment against, an employee; and, (2) that the employer's conduct was

---

[3] In opposition to summary judgment Deschene conceded that section 301 of the LMRA preempted his contractual claims, but argued that the preemptive effect was limited to requiring the state court to apply federal law to those claims. On appeal he has abandoned that contention.

[4] Subdivision (c) of Labor Code section 230 further provides in pertinent part: "Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of such employment by his employer because such employee has taken time off to . . . appear in court as a witness shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by such acts of the employer."

motivated by the employee's taking or having taken time off to appear in court as a witness. In defense of such a claim an employer can argue that either the employee did not give reasonable notice of the court appearance or that the employer did not act out of the prohibited motive.[5]

Both questions are factual in nature and therefore, would not require construing the terms of the CBA. The CBA involved here contains a nondiscrimination provision, but it expressly prohibits only discrimination because of "race, color, creed, sex, age, religion, or national origin." Therefore the issues before the court in this case, as in *Lingle*, are factual ones which could be resolved without the necessity of construing the provisions of the CBA and therefore this state law claim is independent of the CBA for the purposes of the LMRA section 301 preemption. (*Lingle* v. *Norge Division of Magic Chef, Inc., supra*, 486 U.S. at p. 407 [108 S.Ct. at p. 1882].)

As the high court more recently has described the impact of the LMRA section 301 preemption, "In [*Allis-Chalmers Corp.* v.] *Lueck* [(1985) 471 U.S. 202 [105 S.Ct. 1904, 85 L.Ed.2d 206]] and in *Lingle* . . . we underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed that it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . that decides whether a state cause of action may go forward." (*Livadas* v. *Bradshaw* (1994) 512 U.S.107,123-124 [114 S.Ct. 2068, 2078, 129 L.Ed.2d 93], fn. omitted.)

---

[5]There was no dispute that Deschene received time off to give deposition testimony. In reply PPS contended, however, that the policy underlying Labor Code section 230 was not at issue here, since Deschene contends his termination was for the substance rather than the fact of his testifying. The logical implication of PPS's argument is that the section only provides immunity for an employee to appear as a witness, but if the subpoenaed employee testifies in a manner which is adverse to his employer he may be fired for doing so.

PPS argues that Deschene's deposition testimony in *Gatton* could not have been adverse to its interest in any event, because PPS was not a party to the *Gatton* suit under the workers' compensation law protections accorded employers. This is strictly true, however, in *Gatton*, an asbestos case, the jury ultimately found PPS's proportionate fault to be 38 percent. The defendant who went to trial in *Gatton* included Owens-Corning, which had supplied some portion of the asbestos insulation material used in the PPS plant. Owens-Corning was therefore in the position of trying to allocate to PPS the blame for the asbestos exposure suffered by *Gatton* (and presumably by numerous other former PPS and non-PPS workers who may have been present at the plant) during PPS's removal of asbestos from the plant during the 1980's at a time when the risks of asbestos were well known. There was also testimony in *Gatton* to the effect that PPS did not make much effort to protect its employees from friable asbestos by properly encapsulating it.

Deschene testified at his deposition in this case that he and the other workers at the plant were never cautioned about asbestos nor told to wear air masks.

In sum, we find disingenuous assertions by PPS that Deschene who was called to testify at trial in *Gatton* about conditions at the plant was not at least potentially giving testimony which could be injurious to the company.

Deschene is correct that his claims of wrongful termination based upon his health and his testimony are such claims based upon state-conferred rights.

Nor are we persuaded by defendant's contention on appeal that Deschene has not stated a claim for wrongful termination in violation of the public policy against sanctioning an employee for giving adverse testimony pursuant to a subpoena. ■ In order to establish a common law cause of action for wrongful termination in violation of public policy the plaintiff must identify a public policy which: (1) is supported by a constitutional or statutory provision; (2) inures to the benefit of the public at large; (3) is fundamental and substantial; and, (4) is well established at the time of plaintiff's discharge. (*Gantt* v. *Sentry Insurance, supra,* 1 Cal.4th at p. 1090.) Since 1959 California has recognized that it is "obnoxious to the interests of the state and contrary to public policy and sound morality to allow an employer to discharge any employee" because the employee gives truthful testimony. (*Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184, 188 [344 P.2d 25].) Responding to a subpoena and giving truthful testimony when called to testify are unarguably fundamental and substantial policies designed to benefit the public as a whole insofar as the integrity of legal process benefits all citizens. Accordingly California permits subpoenas to be issued to enforce civil discovery and sanctions disobedience of such subpoenas. (Code Civ. Proc., §§ 2020, subds. (a), (b), (g) & (h), 1992, 2023, subds. (a)(4) & (b).)

■ Defendant suggests that Deschene failed to meet his burden to create triable issues of fact (Code Civ. Proc., § 437c, subd. (o)(2)) by responding to its motion for summary judgment with a declaration which "contradicts" the testimony he gave in deposition. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10].) The declaration in question does not—as far as the record before us reveals—contradict the deposition testimony given by Deschene. Moreover, many portions of the Deschene declaration to which PPS objects are consistent with or repetitive of Deschene's deposition testimony submitted by PPS in support of its motion.[6]

### b. *Termination for Medical Condition*

■ Deschene's complaint also alleged that PPS discriminated against him in violation of the Fair Employment and Housing Act (FEHA) because of his "health" condition. Government Code section 12940, subdivision (a) prohibits discrimination by an employer on account of "physical disability"

---

[6]The only specific assertions we find in Deschene's declaration that do not appear in the portions of his deposition offered by PPS are that Moyles would not allow him to inject himself with insulin in the office or permit him to take frequent breaks to eat.

or "medical condition."[7] The complaint alleged that his "health" along with his testimony at the deposition "were substantial and determining factors in . . . PPS's decision to harass then terminate" his employment.

By his declaration Deschene asserted Moyles had refused to accommodate his medical condition (a heart condition and diabetes) by refusing to allow him to inject himself with insulin in a clean location, and refused to permit him to eat frequently or rest periodically. He further stated that prior to working under Moyles, his health problems had been accommodated by his previous supervisor. In deposition testimony Deschene's prior supervisor testified that it "wasn't a problem" for him to permit Deschene to inject his insulin in the foreman's office and he permitted Deschene to rest on occasions when he got "sickly looking." The foreman himself would "temporarily watch [Deschene's] position" at such times.

■ A prima facie case for discrimination on grounds of physical disability under the FEHA requires plaintiff to show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability. (*Brundage* v. *Hahn* (1997) 57 Cal.App.4th 228, 236 [66 Cal.Rptr.2d 830]; *Sada* v. *Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 155 [65 Cal.Rptr.2d 112].) ■ On a motion for summary judgment brought against such a cause of action the plaintiff bears the burden of establishing a prima facie case of discrimination based upon physical disability, and the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. Once the employer has done so the plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated. (*Horn* v. *Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 806-807 [85 Cal.Rptr.2d 459].)

---

[7]Those terms are defined in Government Code section 12926. "(k) 'Physical disability' includes, but is not limited to, all of the following: [¶] (1) Having any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that does both of the following: [¶] (A) Affects one or more of the following body systems: neurological, immunological, . . . cardiovascular, . . . digestive . . . . [¶] (B) *Limits an individual's ability to participate in major life activities.* [¶] . . . [¶] (3) Being regarded as having or having had a disease, disorder, condition, . . . or health impairment described in paragraph (1) or (2)." (*Ibid.*) In opposition to summary judgment Deschene asserted that the medical condition from which he was suffering in 1995 was a physical disability within the meaning of Government Code section 12940.

" 'Medical condition' includes (1) genetic characteristics, or (2) any health impairment *related to or associated with a diagnosis of cancer, for which a person has been rehabilitated or cured,* based on competent medical evidence." (Gov. Code, § 12926, subd. (h).) It was undisputed that Deschene does not have cancer or a cancer-related condition.

It was undisputed that PPS knew Deschene had a heart condition as early as 1993 and it can be inferred that it knew of his diabetes[8] because his former supervisor knew of and made accommodations for that condition. Deschene also presented evidence that from August 1993 through February 1994 under his previous foreman he had not been absent beyond the employee guidelines nor had he received a reprimand for carelessness or causing damage to material, and that some six months immediately before his termination he was operator of a crew which broke a production record.

PPS offered in support of the termination the several reprimands Deschene received in the period from May to June 1995. It also noted that another worker had been terminated for calling his foreman a "faggot."

---

[8]There was no discussion much less dispute below over whether Deschene's heart condition or his diabetes or the two together constituted a physical disability within the meaning of the FEHA. In June of this year the United States Supreme Court decided *Sutton* v. *United Air Lines, Inc.* (1999) 527 U.S. 471 [119 S.Ct. 2139, 144 L.Ed.2d 450] under the Americans with Disabilities Act (ADA). In that case the severely myopic Sutton twins applied to be pilots for United Airlines. The court held that corrective and mitigating measures could be considered in determining whether an individual was disabled for ADA purposes. It found the twins who wore corrective lens were not disabled, and therefore it was permissible for the airline to reject them as job applicants under its criteria for uncorrected vision. In that decision there is discussion of administrative regulations which required that an individual's disability be evaluated against his or her uncorrected or unmitigated condition. (*Id.* at pp. 483-484 [119 S.Ct. at p. 2147].) As an example the court talks about how that approach would play out with diabetics who can control their condition with insulin and suggests that to regard all diabetics as disabled would run contrary to what the majority find to be an "individualized" approach mandated by the statute. (*Ibid.*) The discussion is dicta. But assuming it would affect our interpretation of FEHA (*Cassista* v. *Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1063 [22 Cal.Rptr.2d 287, 856 P.2d 1143] [because the definition of disability in Gov. Code, § 12926, subd. (k) is modeled on the definitions in the federal rehabilitation act interpretation of federal law may be a particularly useful tool for interpretation of the California antidiscrimination statute]), whether or not Deschene's diabetes was controlled was neither a disputed nor an undisputed fact. It simply was not ever raised.

In a companion case to *Sutton*, *Murphy* v. *United Parcel Service, Inc.* (1999) 527 U.S. 516 [119 S.Ct. 2133, 144 L.Ed.2d 484], the court addressed a case where an existing employee was fired for failing to meet the blood pressure requirements to be certified as a driver of commercial vehicles. It concluded that with medication the employee was not hampered in a major life activity because he could perform other jobs as a mechanic which would not require the certification. In that case the district court in ruling on a motion for summary judgment expressly found that the only reason for the firing was the plaintiff's inability to obtain the certification and not out of the employer's " 'unsubstantiated fear that he would suffer a heart attack or stroke.' " (*Id.* at pp. 520-521 [119 S.Ct. at pp. 2136-2137].) The Supreme Court did not reach the related question of whether Murphy was disabled within the ADA "due to limitations that persist despite his medication or the negative side effects of his medication." (*Id.* at p. 521 [119 S.Ct. at p. 2137].) Thus, both *Sutton* and *Murphy* leave open the question whether under the ADA a given individual whose medical condition can be mitigated may still be disabled because the mitigation is either incomplete or itself limits the employee's ability to perform on the job.

As evidence that his termination was pretextual Deschene offered the deposition testimony of a coworker to the effect that on the evening Deschene was fired his foreman, Moyles, was especially critical of Deschene over a problem with the production line that the coworker believed to be solely the responsibility of the maintenance department. According to the coworker the problem persisted for sometime following Deschene's departure and no other operator was reprimanded. The coworker was surprised that on the night of June 26 when Moyles called Deschene away from the production line a replacement operator who had not been scheduled to work appeared in short order to assume Deschene's post. It was undisputed that Deschene testified he had been told by two managers at PPS that Moyles and the vice-president of operations considered him a liability and wanted him out. Moreover, Deschene also offered evidence from a coworker that PPS did not fire workers for misconduct unless the misconduct was witnessed by someone in addition to a supervisor who could substantiate its occurrence.

The question before us is whether this evidence constitutes "specific, substantial evidence of pretext" from which a reasonable trier of fact could conclude that the explanation offered by PPS for Deschene's termination was not credible. (*Horn* v. *Cushman & Wakefield Western, Inc., supra,* 72 Cal.App.4th at pp. 807, 817.) There is certainly substantial evidence that the incident on the night of Deschene's termination may have been unfair or pretextual. What the evidence does not show is a direct causal link between Deschene's physical disability and his firing, though it is clear that until Moyles became his supervisor it had been possible for the company to accommodate Deschene's physical condition and for Deschene to perform well in his job. We believe that the evidence is such that a trier of fact could conclude that the reason given for Deschene's termination was pretextual and that therefore there remained triable issues of material fact as to his claim for discrimination based upon physical disability.

### Impact of Collective Bargaining Agreement

PPS argues that Deschene is precluded from raising either his state-law based claim of termination in violation of public policy or of discrimination based upon his health condition and his testimony because he did not undergo arbitration. PPS argues that by initiating arbitration and then withdrawing from the process he was either bound by his election to arbitrate or he waived any contention his noncontractual claims lay outside the scope of the mandatory arbitration clause in the CBA.

The CBA in force at the time of Deschene's firing defined a grievance as "a condition that exists as a result of an unsatisfactory adjustment or failure

to adjust a claim or dispute by an employee or employees . . . concerning rates of pay, hours, or working conditions set forth herein, or the interpretation or application of this Agreement." A multi-step grievance procedure is then set out that culminates in binding arbitration "[u]pon written request."

The question of whether a provision calling for binding arbitration will encompass all claims as between an employer and employee is not a new one. In *Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36 [94 S.Ct. 1011, 39 L.Ed.2d 147] the United States Supreme Court held that an employee working under a CBA with a grievance procedure culminating in arbitration could, despite having already grieved his discharge through final 8 arbitration, bring an action for racial discrimination under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). In that decision the court expressly rejected the applicability of the doctrine of election of remedies. (*Id.* at p. 50 [94 S.Ct. at pp. 1020-1021].) Likewise the court declined to find that the plaintiff had waived his title VII cause of action, either prospectively or indirectly by accepting employment under a CBA negotiated by his union on behalf of all its members. Insofar as title VII was designed to protect the individual rights of employees to be free of discrimination, the court concluded it would defeat the purpose of Congress in enacting title VII to permit a union to bargain away the protections provided by the statute. (*Id.* at p. 51 [94 S.Ct. at p. 1021].) Finally, the court found that the employee's decision to submit his contractual claims to the arbitral forum, likewise, did not effect a waiver of his right to pursue a judicial remedy. (*Id.* at p. 52 [94 S.Ct. at pp. 1021-1022].)

Some 15 years later, in 1991, the high court again considered whether an agreement to arbitrate would require an employee to submit a purely statutory claim of age discrimination to compulsory arbitration. (*Gilmer* v. *Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20 [111 S.Ct. 1647, 114 L.Ed.2d 26].) Gilmer, described as "an experienced businessman," was hired as a manager of financial services and as a term of his employment was required to register as a securities representative with several stock exchanges; the registration application he signed contained an agreement " 'to arbitrate any dispute, claim or controversy' " which under the rules of the stock exchange included disputes arising out of the termination of his employment. (*Id.* at pp. 22-23 [111 S.Ct. at pp. 1650-1651].) Gilmer, the court held, was therefore bound to arbitrate his age discrimination claim based upon his federal statutory rights because, unlike Alexander, he had under the very broad arbitration provision agreed to arbitrate his statutory claims and because his agreement to do so was not the product of a collective bargaining process. (*Id.* at p. 35 [111 S.Ct. at pp. 1656-1657].)

After the decision in *Gilmer* the Fourth Circuit in *Austin* v. *Owens-Brockway Glass Container, Inc.* (4th Cir. 1996) 78 F.3d 875 extended the

holding of *Gilmer* to preclude an employee subject to a CBA with an arbitration clause from pursing a judicial remedy for her claims based upon title VII and the ADA. It affirmed summary judgment for the employer because the employee had failed to submit her statutory claims to binding arbitration under the CBA. That decision has been strongly criticized. (See *Torrez* v. *Consolidated Freightways Corp.* (1997) 58 Cal.App.4th 1247, 1256-1258 [68 Cal.Rptr.2d 792]; and *Araiza* v. *National Steel and Shipbuilding Co.* (S.D.Cal. 1997) 973 F.Supp. 963, 967.)

Accordingly, in *Torrez* v. *Consolidated Freightways, Corp.*, *supra*, 58 Cal.App.4th at page 1259, the Sixth District held that ". . . a union may not prospectively waive an employee's right to a judicial forum to hear his or her statutory discrimination claims."[9] Plaintiff Torrez, who was subject to a CBA which prohibited discrimination on the basis of national origin and which made mandatory the binding arbitration of grievances, sought to litigate what he claimed to be discrimination in violation of the FEHA. (*Id.* at p. 1250.) His employer was unsuccessful in obtaining an order to compel Torrez to arbitrate; the Court of Appeal affirmed. In doing so it articulated the distinction in the case law as one between an individual employment contract such as Gilmer's where the employee may agree to submit his or her statutory rights to arbitration and a CBA in which the union cannot negotiate away the statutory rights of its individual members to recourse to a judicial forum. (*Id.* at p. 1259.)

Once this fundamental distinction is observed the cases cited by PPS do not support the view that Deschene cannot pursue his state law claims outside of arbitration. Thus, *24 Hour Fitness, Inc.* v. *Superior Court* (1998) 66 Cal.App.4th 1199 [78 Cal.Rptr.2d 533]; *Cione* v. *Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625 [68 Cal.Rptr.2d 167]; and *Spellman* v. *Securities, Annuities & Ins. Services, Inc.* (1992) 8 Cal.App.4th 452 [10 Cal.Rptr.2d 427] each involve contracts made by individual employees rather than employees working under a CBA entered into on their behalf by

---

[9]A narrower holding was reached in the following year by the United States Supreme Court in *Wright* v. *Universal Maritime Service Corp.* (1998) 525 U.S. 70 [119 S.Ct. 391, 142 L.Ed.2d 361]. Without reaching the question of whether a union-negotiated waiver of a judicial forum for a statutory antidiscrimination claim would be enforceable, the court held that a waiver based on language in a CBA, of employees' statutory right to a judicial forum for claims of employment discrimination, must be explicitly stated, clear and unmistakable. (*Id.* at pp. 80-81 [119 S.Ct. at pp. 396-397].) In *Wright* the CBA contained no provisions expresssly subjecting statutory antidiscrimination requirements to arbitration. (*Id.* at pp. 78-79 [119 S.Ct. at p. 396].) The CBA here incorporates language prohibiting discrimination against employees on a variety of grounds that do not include physical disability or retaliation for testimony adverse to the employer. Accordingly, under the "explicit, clear and unmistakable" test applied in *Wright*, the antidiscrimination provisions of this CBA cannot meet the standard for a waiver of a judicial remedy as to Deschene's state law claims.

their union.[10] On its motion for summary judgment PPS made much of the fact that Deschene personally signed the CBA in question. Apparently, from the fact that Deschene signed the agreement PPS sought to suggest that he should be treated as if he were an individual contracting for the terms solely of his own employment. There is nothing in the record to support such a view, and there is deposition testimony from Deschene that suggests that he was merely one of several union signatories to the agreement. In sum, the undisputed fact of his having signed the agreement along with other union members does not compel the inference that he personally was agreeing to arbitrate any state law claims he personally might have against his employer.

Summary adjudication was not properly granted to PPS on Deschene's claims of wrongful termination in violation of public policy or discrimination based upon his health and upon his having testified in the *Gatton* case. Summary adjudication was properly granted as to the breach of contract claim and the claim for breach of the contractual covenant of good faith and fair dealing.[11]

### Disposition

We reverse the judgment of dismissal as to plaintiff's claims of wrongful termination in violation of public policy and of discrimination on the basis of health and in retaliation for giving deposition testimony. In all other respects the judgment is affirmed.

Hanlon, P. J., and Sepulveda, J., concurred.

On November 29, 1999, the opinion was modifed to read as printed above.

---

[10]PPS relies heavily upon an unpublished memorandum decision *Tomasetti* v. *Prudential Insurance Company of America* (E.D.Cal. July 2, 1996, No. CV-F-96-5169 [1996 WL 604752]). Tomasetti was both a member of a union which had a CBA including a mandatory arbitration provision *and* the signatory of a securities registration form of the sort involved in *Gilmer.* Tomasetti initiated arbitration of his termination by the union, but then continued the arbitration and went to court. His employer successfully moved to stay the district court case.

Unlike Deschene, Tomasetti was subject to the rules set out in *both Gardner-Denver* and *Gilmer.* The difference is crucial. Tomasetti was not only bound to arbitrate his CBA related contract claims, but he was bound by his personal agreement on the securities registration form to arbitrate his state law claims as well. When Tomasetti protested that he was no longer a member of the union by the time his grievance was taken to arbitration the court found the issue to be moot since *Tomasetti* had initiated the union grievance procedure.

[11]In light of the result we reach as to the summary judgment we need not reach Deschene's additional contention that his motion for new trial was erroneously denied.