Filed 12/24/13  Lopez v. Stone Brewing Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| KEVIN B. LOPEZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STONE BREWING COMPANY et al.<br><br>    Defendants and Respondents. | D062431<br><br><br><br>(Super. Ct. No. 37-2011-00052402-CU-WT-NC) |


APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Reversed.


Law Office of David A. Miller and David A. Miller for Plaintiff and Appellant.

Gordon & Rees, James J. McMullen, Jr., Eric M. Volkert and Tara J. Gillman for Defendants and Respondents.

Kevin B. Lopez appeals a judgment entered after the trial court granted summary judgment in favor of his former employer, Stone Brewing Company (Stone) and Koochenvagners Brewing Company (together, Defendants), in this action arising out of his termination from employment.  He contends that the court erred in summarily

adjudicating his claims against Defendants.  As we shall explain, the trial court erred in summarily adjudicating two of Lopez's claims; accordingly, we reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2007, Defendants hired Lopez to work as a line cook in Stone's bistro.  In July 2009, Lopez became a bottling line operator, reporting to Kris Ketcham, Stone's packaging supervisor.  In December 2009, Ketcham filled out a team lead statement reporting that Lopez had rashes on his skin that went away after Lopez took one week off of work, concluding that sanitizing chemicals caused the rashes.  Stone sent Lopez to its corporate clinic, Palomar Pomerado Health (the Clinic).  The Clinic recommended that Lopez avoid contact with known irritants, use appropriate personal protective equipment when using products and rotate job tasks.

In late December 2009, the Clinic concluded there was no "clear work place etiology" and referred Lopez to a primary care physician for further assessment of his upper extremity dermatitis because Lopez's rashes did not go away after he avoided contact with the known irritants.  In early April 2010, a work status report from the Clinic indicated that Lopez should avoid the use of gloves, hand contact with hot water, chemicals and known irritants.  (All further date references are to 2010.)  Stone transferred Lopez to its distribution center for about a month where he performed warehouse work that did not require wearing gloves, such as driving a forklift and stacking pallets.

2

In late April, a work status report from the Clinic instructed Lopez to wear glove liners. The glove liners that Stone purchased did not improve Lopez's symptoms. In early May, the Clinic again advised Lopez to wear glove liners and avoid contact with hot water and chemicals. Around this time, Stone offered Lopez a keg line operator position, but Lopez declined this reassignment because the shifts interfered with his class schedule.

On May 12, Lopez's dermatologist advised that Lopez must avoid wearing gloves altogether because it "worsens his skin condition." Lopez's supervisor shifted job duties to provide Lopez with additional forklift duties so that Lopez could avoid wearing gloves. Lopez, however, took a turn too quickly while driving a forklift that caused half of the cases on the pallet to fall off. Lopez met with Vickie Motte, Stone's human resources director, to discuss job reassignment, but they postponed the discussion until after Lopez finished his exams.

On May 18, Motte sent Lopez a letter explaining that Stone was not aware of an effective accommodation to return him to the bottling line as a result of his recent "no glove" restriction. Two days later, Lopez met with Motte to discuss available jobs within his restrictions. Motte inquired if Lopez would be interested in a busser position, but he declined believing he would contact water when bringing dishes to the kitchen. Lopez and Motte also discussed prep cook and Chef de Partie positions, but Lopez believed he did not have the skills for the Chef de Partie position and that both positions required him to get his hands wet.

When Motte informed him that there were no other available positions, Lopez believed he had no choice but to agree to a separation from Stone. On his unemployment application form, Lopez stated he could "no longer fulfill the responsibilities" of his position due to a skin condition.

Lopez filed this action alleging causes of action for wrongful termination, disability discrimination, retaliation, failure to prevent retaliation and discrimination, failure to accommodate, failure to engage in interactive process, violation of Labor Code section 132a and unsafe working conditions. Defendants moved for summary judgment, alternatively summary adjudication of each of Lopez's causes of action. The trial court issued a tentative ruling granting the motion. The trial court later confirmed its tentative ruling and entered judgment in favor of Defendants.

DISCUSSION

I. *Objections*

A. Defendants' Separate Statement

Lopez objected to Defendants' separate statement of undisputed facts as "fatally defective." Lopez asserted that Defendants improperly lumped numerous facts into each "undisputed fact" to tell a story, thus making it difficult to respond to the motion. The trial court overruled Lopez's objection to the format of Defendants' separate statement. Lopez claims the ruling amounted to a prejudicial abuse of discretion.

4

Subdivision (b)(1) of Code of Civil Procedure section 437c requires that summary judgment motions include a separate statement that "plainly and concisely" sets forth "all material facts which the moving party contends are undisputed. Each of the material facts stated shall be followed by a reference to the supporting evidence. The failure to comply with this requirement of a separate statement may in the court's discretion constitute a sufficient ground for denial of the motion." The rules of court further provide that the moving separate statement "separately identify each cause of action, claim, issue of duty, or affirmative defense, and each supporting material fact claimed to be without dispute with respect to the cause of action, claim, issue of duty, or affirmative defense. In a two-column format, the statement must state in numerical sequence the undisputed material facts in the first column followed by the evidence that establishes those undisputed facts in that same column. Citation to the evidence in support of each material fact must include reference to the exhibit, title, page, and line numbers." (Cal. Rules of Court, rule 3.1350(d).)

Defendants' separate statement follows this format, however, each "undisputed fact" is a collection of facts. For example, Defendants' first "undisputed fact" consists of the following: "On November 26, 2007, [Lopez] was hired to work as a line cook in Stone's Bistro earning $9.00/hour. Soon thereafter, in or around February 1, 2008, his title changed to "Commis" or prep cook. While working as a line and prep cook in the Bistro, he was accommodated by being allowed to leave early for his classes and other class-related work to finish his Bachelors [*sic*] Degree in Philosophy. At no time while

5

working in the Bistro did he complain about any medical condition or otherwise." These numerous facts are then followed by citations to the supporting evidence.

The purpose of the separate statement requirement is to give the parties notice of the material facts at issue and to allow the trial court to focus on those facts. (*Parkview Villas Assn., Inc. v. State Farm Fire Casualty Co.* (2005) 133 Cal.App.4th 1197, 1210.) This purpose is defeated when background information is mixed with facts material to a cause of action or defense. With that said, putting background information in a separate statement can save the trial court a substantial amount of time by allowing it to focus on facts that are truly disputed. Accordingly, if background facts are put into a separate statement each fact should be separately listed. Because facts were lumped together, Lopez was required to list those facts he agreed were undisputed and then those facts he contended were disputed. While this may have increased his burden in opposing the motion, we cannot conclude that the trial court prejudicially abused its discretion in accepting Defendants' separate statement.

B. Evidentiary Objections

In ruling on the motion, the trial court expressly sustained or overruled numerous objections to evidence submitted by the parties. In summary judgment proceedings, the weight of authority holds that appellate courts review evidentiary rulings under an abuse of discretion standard. (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335.) Here, however, the parties do not challenge any of the trial court's evidentiary rulings as erroneous or prejudicial; accordingly, we accept the trial court's evidentiary rulings and deem any challenge to them as waived. (*Cahill v. San Diego Gas*

6

*& Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].)  In reviewing this appeal we considered only evidence to which the parties did not object, or to which the trial court overruled the objections.

II.  *Motion*

A.  General Legal Principles

We independently review an order granting summary judgment or adjudication, viewing the evidence in the light most favorable to the nonmoving party.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)  We first identify the issues framed by the pleadings because it is those issues the papers must address.  (*Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1054.)  Second, we determine if the moving party's evidence demonstrates the opponent cannot establish its claim and justifies a judgment in the moving party's favor.  (*Ibid.*)  Lastly, we determine whether the opposing party's evidence demonstrates a triable issue of material fact.  (*Ibid.*)  In determining whether there are triable issues of fact, we consider all the evidence set forth by the parties, except that to which objections have been made and properly sustained. (Code Civ. Proc., § 437c, subd. (c); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)  In performing our review, we are not bound by the trial court's stated rationale, but independently determine whether the record supports the trial court's conclusion that the plaintiff's claims failed as a matter of law.  (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951.)

7

B.  Disability Discrimination

The Fair Employment and Housing Act (FEHA; Gov. Code § 12940 et. seq.) "prohibits employment discrimination based on a physical disability."  (*Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1022.)  (Undesignated statutory references are to the Gov. Code.)  To resolve discrimination claims California courts use the three-stage burden-shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*).  (*Guz*, *supra*, 24 Cal.4th at p. 354.)  Under this test, the plaintiff has the initial burden of establishing a prima facie case of discrimination.  (*Guz*, at p. 354.)  "A prima facie case generally means the plaintiff must provide evidence that (1) the plaintiff was a member of a protected class, (2) the plaintiff was qualified for the position he or she sought or was performing competently in the position held, (3) the plaintiff suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests a discriminatory motive."  (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1004 (*Scotch*).)

"If the plaintiff establishes a prima facie case, then a presumption of discrimination arises, and the burden shifts to the employer to rebut the presumption by producing admissible evidence sufficient to raise a genuine issue of material fact the employer took its actions for a legitimate, nondiscriminatory reason.  [Citation.]  If the employer meets that burden, the presumption of discrimination disappears, and the plaintiff must challenge the employer's proffered reasons as pretexts for discrimination or

8

offer other evidence of a discriminatory motive."  (*Scotch*, *supra*, 173 Cal.App.4th at p. 1004.)

To establish a prima facie case for disability discrimination under the FEHA a plaintiff must show he: (1) suffers from a disability; (2) is otherwise qualified to do his job; and (3) was subjected to adverse employment action because of his disability. (*Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 44.)  The FEHA, however, " 'does not prohibit an employer from . . . discharging an employee with a physical or mental disability, . . . where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations . . . .' "  (*Scotch*, *supra*, 173 Cal.App.4th at p. 1005.)  Where an employee claims discriminatory discharge under section 12940, subdivision (a), the employee has the burden of showing "(1) that he or she was discharged because of a disability; and (2) that he or she could perform the essential functions of the job with or without accommodation . . . ."  (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 962 (*Nadaf-Rahrov*).)

Defendants moved for summary adjudication of this claim on two grounds: (a) Lopez could not establish a prima facie case of disability discrimination because he could not perform the essential functions of his job as a bottling line operator even with reasonable accommodation, and (b) they had a legitimate, nondiscriminatory reason for terminating Lopez's employment because he refused other available vacant positions. The trial court granted the motion on the second ground noting that Defendants presented evidence that they had a nondiscriminatory reason for terminating Lopez's employment

9

because he refused other available vacant positions.  Although not addressed by the trial court, we first examine whether Defendants' evidence shows Lopez could not establish a prima facie case of discrimination because he could not perform the essential functions of any available position with or without reasonable accommodation.

"Evidence of whether a particular function is essential includes, but is not limited to, the following: [¶] (A) The employer's judgment as to which functions are essential. [¶] (B) Written job descriptions prepared before advertising or interviewing applicants for the job. [¶] (C) The amount of time spent on the job performing the function. [¶] (D) The consequences of not requiring the incumbent to perform the function. [¶] (E) The terms of a collective bargaining agreement. [¶] (F) The work experiences of past incumbents in the job. [¶] (G) The current work experience of incumbents in similar jobs."  (§ 12926, subd. (f)(2).)

Additionally, "[a] job function may be considered essential for any of several reasons, including, but not limited to, any one or more of the following: [¶] (A) The function may be essential because the reason the position exists is to perform that function. [¶] (B) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed. [¶] (C) The function may be highly specialized, so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function."  (§ 12926, subd. (f)(1).)

In moving for summary adjudication, Defendants argued that they terminated Lopez because he could not perform the essential functions of his job with or without accommodation. Defendants asserted that working with sanitizing chemicals was an essential function of Lopez's job. This assertion, however, is not supported by a citation to any evidence showing that sanitizing equipment was an essential job function and that wearing gloves and being exposed to sanitizing chemicals or water were essential characteristics of Lopez's job as a bottling line operator. Nor did Defendants present evidence showing that sanitizing equipment was an essential job function because of the limited number of employees available among whom the performance of this job function could be distributed or that the job was highly specialized.

Moreover, Defendants' own evidence does not support their assertion. Defendants' separate statement listed Lopez's job duties and included a written job description signed by Lopez. The "essential duties and responsibilities" of Lopez's job included: glass thrower, case-packer operator, taper, stamper, stacker, forklift driver and filler operator. Each of these categories listed specific job duties; the duties listed did not include sanitizing equipment. Additionally, the description of the work environment noted physical demands of the job and listed several characteristics, including exposure to airborne particles; however, wearing gloves and exposure to sanitizing chemicals or water are not listed.

11

Furthermore, a triable issue of fact exists as to whether Lopez's exposure to chemicals while sanitizing equipment caused his rashes. In December 2009, Lopez's supervisor concluded that sanitizing chemicals caused Lopez's rashes because the rashes went away after Lopez took one week off work. Admissible portions of Lopez's declaration suggest that his use of chemicals while sanitizing equipment caused his rashes. Namely, he did not suffer from rashes when he first began working as a bottling line operator. While working in that position he worked with chemicals such as Dioxychlor and Diactolate to sanitize the bottle filling machine and these chemicals splashed on his body and collected in his gloves. His rashes developed thereafter and worsened the longer he was exposed to them. Although Defendants also presented evidence suggesting there was "[n]o clear workplace etiology" for Lopez's rashes, this merely shows a conflict in the evidence for the trier of fact to resolve.

We now turn to the second basis for summary adjudication, whether Defendants presented evidence that they had a nondiscriminatory reason for terminating Lopez's employment. On this ground the trial court concluded Defendants had a nondiscriminatory reason for terminating Lopez's employment because he refused other available vacant positions. The record supports Defendants' contention that Lopez refused other available vacant positions; namely, busser, prep cook and Chef de Partie. Thus, the burden of proof shifted to Lopez to present evidence showing "the employer's proffered reasons as pretexts for discrimination or offer other evidence of a discriminatory motive." (*Scotch*, *supra*, 173 Cal.App.4th at p. 1004.)

12

Here, the entirety of the evidence creates a reasonable inference that Defendants had a discriminatory motive or that their nondiscriminatory reason for the adverse action was untrue. Motte stated in her declaration that Defendants discussed reassigning Lopez when they realized he "could not perform the essential duties and functions of his position as a Bottling Line Operator." As our earlier discussion reveals, the evidence suggests that sanitizing equipment using chemicals was not an essential function of Lopez's job. Defendants' own evidence also suggests a number of reasonable accommodations existed that might have allowed Lopez to retain his existing position, such as wearing additional protective gear, not using the chemicals or avoiding sanitation. (*Post*, pt. II.C.) Although Defendants shifted Lopez's job duties so that he could avoid wearing gloves, wearing gloves is not listed as a characteristic of Lopez's work environment and Defendants presented no evidence showing that Lopez was required to wear gloves to perform the various duties listed in his written job description.

Finally, Defendants terminated Lopez shortly after he presented a doctor's note and requested to be accommodated to eliminate the wearing of gloves. The timing of Lopez's termination, combined with the above evidence and weaknesses in the evidence, is sufficient to raise a triable issue of fact as to whether the reason for Lopez's termination was pretextual. Accordingly, the trial court erred in summarily adjudicating Lopez's claim for disability discrimination.

C. Failure to Provide Reasonable Accommodation

The FEHA prohibits an employer from "fail[ing] to make reasonable accommodation for the known physical or mental disability of an . . . employee."

13

(§ 12940, subd. (m).)  "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability."  (*Scotch*, *supra*, 173 Cal.App.4th at pp. 1009-1010.)  A reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." (*Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at p. 974.)

Under the California Code of Regulations, examples of reasonable accommodations include reassignment to a vacant or temporary position.  (Cal. Code Regs., tit. 2, § 11068, subd. (d) & (d)(3).)  "If the employee cannot be accommodated in his or her existing position and the requested accommodation is reassignment, an employer must make affirmative efforts to determine whether a position is available." (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1223 (*Raine*).)  As with a FEHA discrimination claim, the plaintiff bears the burden of proving that he or she had the "ability to perform the essential functions of a job with accommodation."  (*Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at p. 977.)

Defendants moved for summary adjudication of the failure to accommodate claim arguing the undisputed facts show they did everything they were required to do under the FEHA to reasonably accommodate Lopez.  The trial court granted the motion on this claim finding Defendants' evidence revealed that Lopez refused to accept two vacant positions, that the burden shifted to Lopez to show a triable issue of fact as to whether a reasonable accommodation was offered and that Lopez failed to meet this burden.

14

Significantly, however, only when an employee cannot be accommodated in his existing position must an employer make affirmative efforts to determine whether another position is available. (*Raine*, *supra*, 135 Cal.App.4th at p. 1223.) Here, a triable issue of fact exists as to whether Defendants could have reasonably accommodated Lopez in his current position.

As discussed above, Defendants failed to present evidence showing that sanitizing equipment, using chemicals and wearing gloves were essential functions of Lopez's job. As such, a triable issue of fact exists as to whether a reasonable accommodation included eliminating equipment sanitizing or tasks involving chemicals or wearing gloves. Lopez's supervisor stated that "after taking a week off" Lopez's rashes "went away" and that when Lopez began sanitizing again, the rashes returned. Although Defendants presented other evidence suggesting that Lopez's sanitizing work and chemical exposure did not cause the rashes, a trier of fact must resolve this conflict.

To the extent that sanitizing equipment, using chemicals and wearing gloves *were* essential functions of Lopez's job, Defendants' own evidence suggests a number of reasonable accommodations existed that might have allowed Lopez to retain his existing position. For example, Lopez's supervisor recommended that Lopez wear additional protective gear, such as a "full body suit," not use the chemicals or avoid sanitation. The Clinic also recommended that Lopez avoid contact with known irritants, use appropriate personal protective equipment when using products and rotate job tasks. Defendants presented no evidence showing they offered Lopez additional personal protective equipment, such as a full body suit as suggested by Lopez's supervisor. While

15

Defendants provided Lopez with cotton glove liners as suggested by the Clinic, Lopez presented evidence that the chemicals saturated the liners and the liners held the chemicals against his skin.

Additionally, "[h]olding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263.) Here, the evidence Defendants presented is conflicting as to whether Lopez simply needed additional time to heal. When the rashes first manifested Lopez's supervisor noted that they went away after Lopez took a week off sanitizing. In contrast, Lopez testified during his deposition that when he stopped doing sanitation for an unspecified period of time the rashes remained. Moreover, admissible portions of Lopez's declaration suggest that his rashes began to heal after he worked in the warehouse for two to three weeks without wearing gloves and without being exposed to chemicals, but that he was sent back to the bottling line and his request for accommodation of extra time to heal was refused. Thus, the trial court erred in summarily adjudicating Lopez's claim for failing to provide a reasonable accommodation.

D. Failure to Engage in Interactive Process

The FEHA makes it unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical

16

condition." (§ 12940, subd. (n).) The essential elements of a cause of action for failure to engage in an interactive process are: (1) the plaintiff has a disability that was known to his employer, (2) the plaintiff requested that his employer make a reasonable accommodation for that disability so he would be able to perform the essential job requirements, (3) the plaintiff was willing to participate in an interactive process to determine whether a reasonable accommodation could be made, (4) the employer failed to participate in a timely, good faith interactive process with the plaintiff, (5) the plaintiff was harmed, and (6) the employer's failure to engage in a good faith interactive process was a substantial factor in causing the plaintiff's harm. (§ 12940, subd. (n); CACI No. 2546.)

"Once the interactive process is initiated, the employer's obligation to engage in the process in good faith is continuous. '[T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed. This rule fosters the framework of cooperative problem-solving contemplated by the ADA, by encouraging employers to seek to find accommodations that really work . . . .' " (*Scotch*, *supra*, 173 Cal.App.4th at p. 1013.) To prevail on a claim for failing to engage in the interactive process, the plaintiff must prove not only that the employer failed to engage in an appropriate interactive process, but that a reasonable accommodation was possible. (*Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at p. 984.)

17

Defendants sought summary adjudication of this claim contending the evidence shows they continuously engaged in the interactive process and reasonably accommodated Lopez in numerous ways over an extended period of time. The trial court granted the request, finding that the evidence presented in connection with the discrimination and retaliation claims indicate Defendants engaged in the interactive process by offering Lopez several alternative jobs and that Lopez had not met his burden of showing the existence of a triable issue of material fact. We conclude the trial court erred because Defendants' evidence suggests a reasonable accommodation was possible and they failed to engage in an appropriate interactive process.

As discussed above, a triable issue of fact exists as to whether Defendants could reasonably accommodate Lopez by eliminating the task of sanitizing equipment from Lopez's job duties. (*Ante*, pt. II.C.) This evidence creates an inference that Defendants failed to engage in an appropriate interactive process. Notably, Defendants presented no evidence showing they sought to keep Lopez in his current position by eliminating the task of sanitizing equipment from Lopez's job duties. Nor did they present evidence showing it was impossible to accommodate Lopez by eliminating the task of sanitizing equipment. Thus, the trial court erred in summarily adjudicating Lopez's claim for failing to engage in the interactive process.

E. Retaliation and Failure to Prevent Retaliation and Discrimination

It is unlawful for an employer to "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceedings

18

under this part." (§ 12940, subd. (h).)  It is also unlawful for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).)  A cause of action for failure to prevent retaliation may be stated under section 12940, subdivision (k).  (*Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1239-1240.)

Lopez's complaint contains causes of action for retaliation and failure to prevent retaliation and discrimination.  Lopez alleged that Defendants retaliated against him based on his acts of seeking accommodation for his medical condition and complaining about broken glass.  Retaliation claims, like discrimination claims, are subject to the three-stage burden-shifting test.  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)

"To establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two."  (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 614 (*Fisher*).)  The prima facie evidentiary burden is " 'not onerous.' "  (*Guz*, *supra*, 24 Cal.4th at p. 355.)  "The retaliatory motive is 'proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter.' [Citation.]  'The causal link may be established by an inference derived from circumstantial evidence, "such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the

19

protected action and allegedly retaliatory employment decision." ' "  (*Fisher*, *supra*, at pp. 614-615.)

Defendants challenged Lopez's prima facie showing of retaliation, arguing that a causal link did not exist between the protected activity and their action because there is no evidence that an adverse employment action was based on Lopez's medical condition or complaining about broken glass.  The trial court summarily adjudicated the retaliation claim because Lopez failed to show that Defendants were motivated by a discriminatory reason or that their reason for termination was unworthy of credence.  Because it found no discrimination or retaliation, the trial court concluded that Lopez's claim for failure to prevent retaliation and discrimination necessarily failed.

We conclude that Lopez made the minimal evidentiary showing necessary to sustain a prima facie case of retaliation.  Defendants do not challenge that Lopez engaged in a protected activity (i.e., seeking an accommodation) and that he suffered an adverse employment action (i.e., lost his job).  Defendants challenge whether Lopez met his prima facie burden of showing that a causal link existed between the two factors.

Significantly, "[a] plaintiff can satisfy his or her initial burden under the test by producing evidence of nothing more than the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."  (*McRae v. Department of Corrections and Rehabilitation* (2006) 142 Cal.App.4th 377, 388.)  Here, admissible portions of Lopez's declaration show that on May 12, he obtained a doctor's note

20

requesting accommodation for his work-related injury and disability. He gave the note to Motte on May 14, and was terminated on May 20.

Thus, the trial court erred in summarily adjudicating Lopez's retaliation claim. Additionally, because Lopez has stated actionable claims for discrimination and retaliation, his claim for failure to prevent discrimination and retaliation survives. (See *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925, fn. 4.)

F. Wrongful termination

A claim for wrongful termination in violation of public policy requires a plaintiff to prove (1) he was employed by the defendant, (2) the defendant discharged him, (3) a violation of public policy was a motivating reason for the discharge, and (4) the discharge caused him harm. (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 641.) This claim, however, fails as a matter of law where the plaintiff is unable to establish a violation of an underlying statute or constitutional right. (See, e.g., *Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 632.) Because Lopez's claims alleging various violations of the FEHA survived Defendants' motion, this claim survives as well. (*Ante*, pts. II.B-E.)

G. Violation of Labor Code section 132a

Labor Code section 132a prohibits employers from discriminating against employees "who are injured in the course and scope of their employment." Lopez alleged that Defendants retaliated and discriminated against him when he made it known that he intended to file a worker's compensation claim. Relying on *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143 (*Moorpark*), Defendants sought summary adjudication of

21

this claim on the ground it is improper to bring a claim for violation of Labor Code section 132a in civil court. The trial court agreed.

Moorpark provides that "the Workers Compensation Appeals Board [is] the exclusive *forum*" for claims brought under Labor Code section 132a. (*Moorpark*, *supra*, 18 Cal.4th at p. 1156.) Lopez did not argue differently on appeal; rather, relying on *Moorpark*, he claimed that a Labor Code section 132a violation may be used as a public policy basis to bring a common law claim for wrongful termination.

Our high court in *Moorpark* held that Labor Code section 132a does not provide an exclusive remedy against disability discrimination and does not preclude an employee from pursuing remedies under the FEHA and common law wrongful termination remedies. (*Moorpark*, *supra*, 18 Cal.4th at p. 1158.) The *Moorpark* court, however, never addressed the precise issue whether a violation of Labor Code section 132a can form the basis of a common law action of wrongful termination in violation of public policy. Recently, another appellate court addressed this issue and concluded that a violation of Labor Code section 132a cannot be the basis of a tort action for wrongful termination. (*Dutra v. Mercy Medical Center Mt. Shasta* (2012) 209 Cal.App.4th 750, 755.) Thus, to the extent Lopez asserts this claim is one for wrongful termination based on a violation of Labor Code section 132a, the claim fails. Thus, the trial court properly granted summary adjudication of this claim.

H. Unsafe Working Conditions

"Any employee who is discharged . . . by his or her employer because the employee has made a bona fide oral or written complaint to . . . his or her employer, . . .

22

of unsafe working conditions, or work practices, . . . shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer." (Lab. Code, § 6310, subd. (b).)

Lopez asserted a claim for retaliation for opposing unsafe working conditions in violation of Labor Code sections 6300, et seq. and 6400, et seq. Lopez alleged that he repeatedly complained to management about unsafe working conditions in the bottling department created by excessive broken glass. The trial court granted summary adjudication of this claim on the ground Lopez admitted that he never complained about excess broken glass. During his deposition, Lopez testified that he believed broken glass in the bottle operation constituted a safety issue, but admitted that he never complained about the problem. The admissible portions of Lopez's declaration also fail to show he complained about the problem; accordingly, his claim for retaliation for opposing unsafe working conditions necessarily fails.

DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. The trial court is directed to vacate its order granting Defendants' summary judgment and to enter a new and different order (1) denying Defendants' motion for summary judgment, (2) denying Defendants' motion for summary adjudication of Lopez's causes of action for disability discrimination, retaliation, failure to prevent retaliation and discrimination, failure to accommodate, failure to engage in interactive process and wrongful termination, and (3) granting Defendants' motion for summary adjudication of Lopez's causes of action for violation of Labor Code section 132a and unsafe working conditions. Plaintiff is entitled to his costs on appeal.

McINTYRE, J.

WE CONCUR:

NARES, Acting P. J.

O'ROURKE, J.