Filed 6/23/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| EPIC COMMUNICATIONS, INC., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> RICHWAVE TECHNOLOGY, INC,. et al., <br><br> Defendants and Respondents. | H037884 <br> (Santa Clara County <br> Super. Ct. No. 1-06-CV076689) |

In this case we are again called upon to determine whether a defendant is entitled to the protection of a broad release clause contained in a settlement agreement to which the defendant is a stranger. In *Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020 (*Rodriguez*), we held that language unambiguously releasing "all persons" from liability was on its face an objective manifestation of intent to extend the release to third parties, and thus entitled a stranger to summary judgment in the absence of countervailing evidence. While acknowledging that this result could present troubling questions of policy, we found it dictated by basic principles of contract law. Critically, however, the release in that case was unambiguous within its four corners, and no cogent reason was presented to question its literal accuracy as an expression of the parties' intent. Here, in contrast, several other provisions of the settlement agreement containing the release clause are not easily reconciled its seemingly broad language. The subsequent conduct of the contracting parties also appears inconsistent with an intent to extend the release to

unaffiliated third parties. We conclude that in view of these ambiguities, the trial court erred by granting summary judgment in favor of strangers to the contract who raised the release as a defense. Our reversal of the judgment on that ground renders moot a cross-appeal by the defendants from the trial court's denial of their motion for attorney fees.

## BACKGROUND

### A. Initiation of Suit

This matter was previously before us in *Epic Communications, Inc. v. Richwave Technology* (2009) 179 Cal.App.4th 314 (*Epic I*), review denied February 18, 2010, where we described the background of the suit in some detail. To summarize, Epic Communications Inc. (Epic) brought this action against ALi Corporation (ALi), Richwave Technology, Inc. (Richwave), and Shyh-Chyi Wong, alleging that ALi had transferred certain of Epic's intellectual property to Wong and Richwave in violation of agreements between Epic's predecessor in interest, OEpic Inc. (OEpic), and ALi. Specifically, Epic alleged that OEpic and ALi had agreed to cooperate in developing a power amplifier for use in wireless networking devices. (*Id.* at p. 319.) In connection with those efforts they entered into a nondisclosure agreement (NDA) in which they undertook not to make any other use of the information they exchanged in connection with their joint activities. Wong signed the agreement on ALi's behalf as the associate vice-president of its " 'RF/Communications' " unit. (*Id.* at p. 319.) In February 2003, after negotiations largely conducted through Wong, ALi and OEpic entered into a design services agreement (DSA) under which OEpic would design an amplifier for ALi's use. This agreement too prohibited ALi from disclosing any confidential information it might acquire from OEpic. (*Id.* at pp. 320-321.)

At the end of 2003, Wong formed Richwave, which she and others described as a "spin-off" of the RF unit. (*Id.* at p. 321.) According to Epic, OEpic continued to transfer intellectual property to Wong's team based upon assurances that ALi's rights and

2

obligations under the DSA had been or would be assumed by Richwave. However, Richwave subsequently disclaimed any need for OEpic's services, and ALi disclaimed any further obligation to OEpic on the ground that it had not used and would not use any of the OEpic's intellectual property in its products. (*Id.* at pp. 321-323.) In November 2004, Epic was formed and became successor to all of OEpic's interest in the matter. (*Id.* at p. 325.)

Epic brought this action in 2006 alleging that ALi had "breached both the nondisclosure agreement and the design services agreement 'by allowing Richwave to access and use Epic's . . . confidential information,' as a result of which 'Epic has suffered economic loss . . . .' "[1] (*Id.* at p. 325.) Additional causes of action charged ALi, Wong, and Richwave with fraud, misappropriation of trade secrets, civil conspiracy, and unfair competition. (*Id.* at pp. 325-326.)

Wong and Richwave moved to quash service, asserting that they lacked sufficient contacts with California to be subject to suit in its courts. (*Id.* at p. 326.) The trial court granted the motion, and Epic appealed. (*Ibid.*)

## B. *Arbitration and Settlement*

While Epic pursued its appeal from the order quashing service on Wong and Richwave, its claims against ALi proceeded in the trial court. After the trial court granted ALi's motion to compel arbitration, the claims were presented to a panel of arbitrators, who ultimately issued an award against ALi and in favor of Epic for a specified sum of money.[2] The award concluded with the proviso, "Nothing in this

---

[1] Epic was eventually joined as a co-plaintiff by EpicCom, Inc., which is described in the complaint as " 'either a licensee or co-owner of Epic's intellectual property rights at issue in this case.' " (*Id.* at p. 325.) Its position appears indistinguishable from Epic's for present purposes. We will refer to both entities collectively as Epic.

[2] Out of respect for the parties' express intention to keep their settlement confidential, we describe the award as vaguely as circumstances permit.

3

Interim Award is intended to determine any issues or claims that may exist between Epic and RichWave."

In addition to damages, the award entitled Epic to recover interest, attorney fees, and costs in amounts to be determined later. Rather than engage in further adversarial proceedings to resolve those issues, ALi and Epic entered into a settlement agreement, dated July 21, 2009, under which ALi would pay Epic a specified sum representing damages and interest, plus an additional sum representing fees plus costs. The agreement included a broad release clause, set forth in full below (see fn. 6). However it also declared that it had a limited purpose, i.e., "to compromise and settle the Interim Award without the need for further arbitration proceedings on the dispute of damage award interest, attorneys' fees and costs." In addition, it prohibited either party from disclosing the terms of the agreement to any third party, and sharply restricted the rights of third parties to "claim any right or benefit" under it. (See pt. I, *post*.)

## C. *Further Proceedings Against Wong and Richwave*

About a month after Epic and ALi entered into the settlement agreement, this court heard oral argument in *Epic I*. (California Courts, Appellate Courts Case Information <http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=6&doc_id=1195348 &doc_no=H032378 (as of Jun. 17, 2015).)[3] A month after that, pursuant to the settlement, Epic filed a request dismissing its complaint in this matter "[a]s to [d]efendant ALi Corporation [o]nly." On November 17, 2009, we issued our decision in *Epic I*, *supra*, 179 Cal.App.4th 314, reversing the order quashing service, and reinstating Epic's claims against Wong and Richwave.

---

[3] On our own motion, we take judicial notice of the docket and calendar in *Epic I*. (See *Dwan v. Dixon* (1963) 216 Cal.App.2d 260, 265 ["a court may take judicial notice of the contents of its own records"]; *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 37, fn. 2 [court on its own motion took judicial notice of prior opinion].)

4

On May 20, 2010, Wong and Richwave moved jointly with two other defendants to compel Epic to produce documents relating to its arbitration with ALi.[4]  According to the moving papers, Epic had no objection to producing the documents, but was unwilling to do so in the absence of a court order, because ALi objected to their production.[5]  Although we find no order in the joint appendix, the court apparently granted the motion, permitting Wong and Richwave to obtain copies of the settlement materials.

On February 24, 2011, Wong and Richwave moved for summary judgment or summary adjudication on the ground that "[p]laintiffs' settlement agreement with defendant [ALi] bars all [p]laintiffs' remaining causes of action . . . ."  Many of the supporting and opposing documents, including the settlement agreement, were filed under seal.  Wong and Richwave argued that (1) the agreement released ALi's "past, present, and future . . . assignees, . . . shareholders, . . . [and] employees"; (2) Wong was a past employee of ALi; (3) Richwave was "an assignee and shareholder of ALi"; and therefore (4) the release barred any claim Epic might assert against them concerning the matters alleged in the complaint.

The trial court granted the motion for summary judgment.  Wong and Richwave then moved for an award of attorney fees under Civil Code section 3426.4.  The court denied that motion and entered judgment for defendants.  Epic filed a timely appeal from the judgment, and defendants filed a timely cross-appeal challenging the denial of fees.

---

[4]  Epic had named the other two movants as defendants in a separate suit that was consolidated with this one after we reversed the order quashing service.  Apart from their participation in the motion to compel, including a supporting declaration from their attorney which we cite in the discussion below, the presence of those defendants has no apparent bearing on the issues we address here.

[5]  In fact counsel for Epic filed a declaration in support of the motion to compel, making it in effect a joint application by all of the parties remaining in the action.

5

## I.  *Facial Ambiguity*

The motion for summary judgment was predicated on the broadly worded release clause in the settlement agreement.[6] In determining whether that clause barred this action, the threshold question is whether the agreement is ambiguous with respect to the extinction or preservation of Epic's claims against third parties such as Wong and Richwave.  " ' " 'When a dispute arises over the meaning of contract language, the first

---

[6] "Full & Final Settlement/Mutual Releases.

"For the avoidance of doubt and if not already terminated, the NDA and DSA are terminated as of the date of this agreement between the Parties.

"Upon the receipt of Payment, except for the confidentially obligations stated in the NDA, the DSA, and any stipulated Protective Orders in any legal proceeding, in consideration of the promises set forth herein, including but not limited to payment of all sums due hereunder, Epic on the one hand, and ALi, on the other hand, each on behalf of itself and its respective past, present, and future affiliates, successors, predecessors, assignees, transferees, heirs, executors, administrators, members, directors, officers, shareholders, partners, principals, agents, employees, servants, attorneys, accountants, and corporate subsidiaries do hereby irrevocably and unconditionally release and forever discharge each other and each of their respective past, present, and future affiliates, successors, predecessors, assignees, transferors, heirs, executors, administrators, members, directors, officers, shareholders, partners, principals, agents, employees, servants, attorneys, accountants, corporate parents, and corporate subsidiaries, of and from any and all past, present, and future claims, demands, causes of action, rights, violations of any law or rule including those relating to or concerning breach of contract, breach of warranty, damages, compensation, loss of services, expenses and attorney's fees, arbitration and/or court cost, any costs, whether or not contingent, unliquidated or unmatured, known or unknown, present or future, actual or prospective or otherwise, ascertained or severally or jointly with any other person(s), arising out of, concerning, resulting from or relating to the NDA, the DSA, and/or the Interim Award, or any facts, things, matters or incidents relating thereto or arising therefrom.

"In this Agreement, ALi specifically does not release or waive any of its rights or claims against its own employees, directors, and/or officers, past or present, in managing or dealing with this NDA, DSA, Interim Award, this Agreement or other related matters."

6

question to be decided is whether the language is "reasonably susceptible" to the interpretation urged by the party.' " ' " (*Hartzheim v. Valley Land & Cattle Co.* (2007) 153 Cal.App.4th 383, 389, quoting *People ex rel. Lockyer v. R. J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 524.)

The trial court answered this question in the negative, declaring that "the Settlement Agreement is unambiguous on its face." We must reject this conclusion. We may assume for these purposes that as in *Rodriguez*, *supra*, 212 Cal.App.4th at page 1023, the release clause, standing alone, "unambiguously expresses a mutual intent to benefit a class of third persons" including defendants.[7] But "[t]he character of a contract is not to be determined by isolating any single clause or group of clauses . . . ." (*Transportation Guarantee Co. v. Jellins* (1946) 29 Cal.2d 242, 247.) On the contrary, "[a] contract is to be construed as a whole, 'so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' " (*McCaskey v. California State Auto. Assn.* (2010) 189 Cal.App.4th 947, 970, quoting Civ. Code, § 1641; see *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1027, 1029; *Lemm v. Stillwater Land & Cattle Co.* (1933) 217 Cal. 474, 480 ["Although the language of the contract must govern its interpretation (Civ. Code, §§ 1638, 1639), nevertheless the meaning is to be obtained from the entire contract, and not from any one or more isolated portions thereof."].)

In *Rodriguez* we applied the release clause according to its literal terms because the plaintiff pointed to nothing else in the agreement—or outside of it—making it

---

[7] The release did not extend to " 'all other persons . . . and corporations,' " as did the one in *Rodriguez*, *supra*, at page 1024, footnote 2. However, Wong claimed its protection as a former "officer[]" and "employee[]," while Richwave invoked the release as a "shareholder." Richwave's claim was particularly striking as it rested on Wong's averment that *as of the time of the motion for summary judgment*, Richwave "own[ed] 1,000 shares of ALi stock." Under defendants' implicit reading, then, *anyone* could buy the protection of the release by purchasing ALi stock *at any time*.

7

"reasonably susceptible" to the interpretation urged by the plaintiff. (*Hartzheim*, *supra*, 153 Cal.App.4th at p. 389.) We rejected the idea that in such a case, the would-be releasee bears some burden to prove that the parties actually intended what their agreement said. Here, in contrast, the release was but one clause in a lengthy and multifaceted settlement agreement negotiated between sophisticated business enterprises. Viewed in its entirety, that agreement did not unambiguously express an intention by the parties to release these defendants. Rather, several clauses of the contract manifest a contrary intention, making the agreement as a whole not only reasonably, but highly susceptible to an interpretation in which the release did not operate in favor of Wong or Richwave.

To begin with, the settlement agreement's introductory recitals acknowledge the existence of Epic's claims against Wong and Richwave, yet describe the purpose of the settlement agreement in terms too narrow to cover those claims. The agreement describes the underlying contractual dispute; recites that it gave rise to the present lawsuit against Wong, Richwave, and ALi; notes that the claims against ALi were carved out for arbitration; and then summarizes the resulting award, noting the unresolved issues of fees, costs, and interest. The fourth and final recital then declares, "It is the desire of Epic and Ali to *compromise and settle the Interim Award* without the need for *further arbitration proceedings* on the dispute of damage award interest, attorneys' fees and costs."[8] (Italics added.)

_____

[8] Most pertinently, the agreement recites, "B. On December 18, 2006, Epic filed a lawsuit entitled Epic Communications, Inc. . . . v. ALi Corporation . . . , Richwave Technology, Inc. . . . , and Shyh-Chyi Wong . . . , for, inter alia, breach of contract, fraud, and misappropriation of trade secrets . . . . In 2007, ALi successfully moved its case to International Arbitration Tribunal, International Centre for Dispute Resolution, San Francisco, California . . . (the "Arbitration"). [¶] C. In the Arbitration, Epic was awarded damages of $[sum omitted], which included . . . pre-award interest . . . although this final amount will be recalculated . . ., as well as attorneys fees and costs to be determined at a future hearing, by the Interim Award of Arbitrators on June 30, 2009

8

This declared purpose falls well short of the effect contended for by Wong and Richwave, which is the extinction of Epic's pending claims against them. Had the parties intended such an effect, they might have been expected to express the purpose of the settlement agreement more broadly, e.g., as extinguishing all existing and potential claims arising from the events giving rise to the suit and the award. Indeed, given the acknowledgment of still-pending claims against Wong and Richwave, the parties might have expressly agreed that Epic would dismiss this suit—or, at that time, the appeal in *Epic I*—in exchange for ALi's payment of money. Instead they described the agreement as intended only to resolve the claims between themselves on terms consistent with the arbitration award.

This narrow intention is reflected in several of the agreement's covenants as well. For instance, the covenant governing payment states, "In exchange for *avoiding further proceedings on Arbitration* and under the principle of Interim Award, ALi agrees to pay Epic in United States dollars [sum omitted] . . . ." (Italics added.) Indeed something of a smoking gun appears in Paragraph 7, entitled "Successors and Assigns," which states, "This Agreement shall be binding upon, inure to the benefit of and be enforceable by *Epic and ALi, and their respective successors and assigns* but may not be assigned by either Party without the prior consent in writing of the other Party. *No other person or entity other than the Parties hereto shall be entitled to claim any right or benefit under this*"—at which point the paragraph ends without punctuation. (Italics added.) The parties obviously omitted the object of the concluding prepositional phrase, but defendants assume the phrase refers to "the Agreement," and that indeed seems the most

(collectively, the "Interim Award") from Epic's Claims concerning ALi's breach of contract and misappropriation of trade secrets. [¶] D. It is the desire of Epic and ALi to compromise and settle the Interim Award without the need for further arbitration proceedings on the dispute of damage award interest, attorneys' fees and costs."

9

likely intent. So understood, this paragraph explicitly limits the right of third parties to "claim any right or benefit" under the settlement agreement unless they qualify as "successors" or "assigns."

So far as this record shows, Wong is not even arguably a "successor" or an "assign" of any interest of either party. Richwave claims to be an assignee of certain of ALi's intellectual property rights, but does not and cannot claim to be an assignee of its rights *under the settlement agreement*. To establish such status would require the prior written assent of Epic, which we may assume would not be forthcoming. Richwave might claim to be a "successor" to certain specific rights previously owned by ALi in a strictly literal sense—much as the purchaser of bananas "succeeds" to the produce market's interest in them—but it is highly doubtful that a provision intended to limit the rights of third parties could be intended to sweep so broadly. "Successor" was more likely meant in the sense of "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." (Black's Law Dict. (10th ed. 2014) p. 1660, col. 2.) At best the term is ambiguous. Nothing in this record would permit resolution of that ambiguity in defendants' favor.

The contracting parties were of course competent to limit the standing of strangers to assert rights under their contract. A may contract with B to provide some benefit to C; yet the parties may agree at the same time that C will have no power to enforce that undertaking, thereby effectively making enforcement of the provision discretionary with B, the promisee. Unless C has some other right to the agreed-upon performance—i.e., a right arising independently of the contract—then C will be powerless to compel A's performance or to seek damages for a breach. Indeed, C's interest is not truly a right at all but a mere expectancy, the realization of which is wholly dependent upon B's willingness to enforce the contract. Such a provision does not, as defendants insist,

10

"completely abrogate[]" the undertaking. It simply limits the class of persons entitled to enforce it. The courts have no reason to balk at such limitations, at least where the benefit is, from the third party's perspective, a mere gratuity. Here defendants neither promised nor gave up anything for the benefit they claim. So far as this record shows, any release of their liability would have been a gift to them—one that the parties were free to restrict in any way they saw fit.

As we observed in *Rodriguez*, *supra*, 212 Cal.App.4th at page 1028, the pivotal question in a case of this kind is "whether the parties intended to confer *enforceable* rights on the party now asserting them." (Italics added.) Here the parties expressly declared an intention *not* to confer enforceable rights on anyone other than "successors" and persons to whom such rights were assigned with the "prior consent in writing" of the non-assigning party. That limitation on enforcement by third parties may indeed conflict with the broad language of the release clause, but such a conflict only furnishes an occasion to further examine the agreement and other proofs to ascertain the parties' intentions. "[W]here two [contract] provisions conflict, the resulting '[r]epugnancy . . . must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract.' (Civ.Code, § 1652; see § 1643 [contract should 'receive such interpretation as will make it . . . operative . . . and capable of being carried into effect, if it can be done without violating the intention of the parties']; cf. § 1653 [terms found to be 'wholly inconsistent' with contract's 'nature, or with the main intention of the parties, are to be rejected'].)" (*McCaskey v. California State Auto. Assn.*, *supra*, 189 Cal.App.4th 947, 970.)

Here we have no difficulty at all in giving "some effect" to the release clause without offending the assignment clause. The release obviously bars further litigation between Epic and ALi on the claims embodied in the arbitration award, as well as by or against any "successor" or mutually consented-to assignee of either. This of course was

11

the "main intention of the parties" with respect to the release clause. Their main intention with respect to the assignment clause, however, was to sharply limit the class of persons entitled to enforce this undertaking. Defendants' reading of the contract is "wholly inconsistent" with that intention.

Further intrinsic evidence that the contract was not intended to confer enforceable rights on these defendants appears in Paragraph 10, which bars both parties from *disclosing the terms* of the agreement, except under legal compulsion, to any but a tiny class of persons.[9] The contracting parties could hardly expect that persons thus barred from knowledge of the agreement—which includes defendants—would be able to take advantage of the release, or any other provision of the agreement. One cannot enforce a contract of which one is ignorant, and if the contracting parties have deliberately undertaken to hold their agreement in confidence, they cannot be supposed to have meant to confer enforcement powers on those thus deliberately kept in the dark. That contracting parties have bound themselves not to disclose their contract to third persons is strong evidence that they intended not to invest such persons with rights under it.

We thus find ample evidence on the face of the contract that Epic and ALi did not intend to vest defendants with any enforceable rights under their settlement. Nor do

---

[9] "Confidentiality . This Agreement and its terms are confidential, and such contents shall remain and he kept confidential, including the fact and amount of consideration paid hereunder. Neither any copy nor the original shall be disclosed to any person or entity not a party to this Agreement (except for the attorneys and accountants for the parties, or persons directly employed by Epic or the ALi) except pursuant to court process or subpoena. The Parties, as well as their representatives, servants, agents, heirs, employees, successors, administrators, executors, attorneys, co-partner [*sic*] and insurers agree that they will not disclose or reveal the terms of this Agreement to any other individual, corporation, or entity except (1) as required by court order, law, statute or regulation; (2) as may be necessary to enforce the rights contained herein in an appropriate process or legal proceeding to appropriate legal authority; or (3) as may be required for tax or financial reporting purposes."

defendants cite anything in the release that might dissuade us from this view. Apart from the isolated language of the release itself, the only textual support they offer for their reading of the contract is the third paragraph of the release clause, which specifies that the release does not apply to claims by ALi "against its own employees, directors, and/or officers, past or present, in managing or dealing with this NDA, DSA, Interim Award, this Agreement or other related matters." Defendants point out with some justice that ALi's express reservation of specified claims supports an inference that if the parties had intended to preserve other claims—and specifically Epic's claims against the remaining defendants—they would have said so. This would be a reasonable inference, standing alone, but we do not believe it is sufficient to dispel the ambiguity otherwise surrounding the release clause, particularly on a motion for summary judgment. It may be true that ALi's express reservation of rights against its own employees and officers should have alerted Epic, or its attorneys, to the advisability of expressly reserving Epic's claims against Wong and Richwave.[10] But at the same time, the cited provision has some tendency to support an inference that the parties did *not* intend to release these defendants from the claims asserted against them by Epic. ALi's express reservation of rights would apparently include any claims it might have against Wong, who was, prior to the "spin-

---

[10] Epic's president Pao declared that the settlement agreement "was completed without our litigation attorney's involvement and he was notified only after the settlement agreement was concluded." This is regrettable because, as we observed in *Rodriguez*, *supra*, 212 Cal.App.4th at page 1032, the person drafting a release—typically on behalf of the releasee—is naturally intent on cutting off claims against any and all "persons, or categories of persons, whose potential liability might ultimately flow back to" the releasee. From the releasee's perspective there is nothing to lose in erring on the side of overbreadth. This makes it incumbent upon the releasor's counsel—preferably its litigation counsel—to examine the language of the release so as to avoid giving away rights that the releasor, if properly advised, might be unwilling to surrender. Epic's failure to do so here has not proven fatal, but it has triggered yet another procedural detour in a lawsuit now in its ninth year.

off" that formed Richwave, not only an employee but a vice-president, and thus an officer, of ALi. (*Epic I*, *supra*, 179 Cal.App.4th at p. 319.) Indeed, given the background of the dispute as described in *Epic I*, Wong may have been the chief object of ALi's reservation of rights. It is still possible, of course, that ALi might wish to extinguish Epic's claims against Wong, even while reserving a right of action in itself. But the agreement's failure to specifically address those claims, which it acknowledged to be pending, supports an inference that ALi, like Epic, simply assumed the release had no effect on them.[11]

---

[11] In this context it bears emphasis that the interim award, on which the settlement agreement was based, expressly excluded Epic's claims against Wong and Richwave, stating, "Nothing in this Interim Award is intended to determine any issues or claims that may exist between Epic and RichWave." Although Epic has not argued the point, the award—to which the agreement refers by assigned title ("Interim Award") at least six times—might be found to have been incorporated in the agreement by reference. (See *Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54 ["The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.' "]; *Wolschlager v. Fidelity Nat. Title Ins. Co.* (2003) 111 Cal.App.4th 784, 791 [preliminary title report sufficiently incorporated title policy to bind insured to arbitration clause in policy]; but see *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1608 ["To impliedly incorporate an external document by reference, the subject document must contain some clear and unequivocal reference to the fact that that the terms of the external document are incorporated."].)

Assuming the agreement's pervasive references to the award did not operate, as a technical incorporation by reference, the agreement nonetheless expressly declares its own purpose to be limited to the matters addressed in the award. Epic's president Pao explicitly declared what might thus be inferred from the face of the two documents: "As the Interim Award already expressly excluded issues or claims in the Richwave case, neither ALi [nor] Epic had any intent to deviate from the Interim Award on this issue. . . . As the Interim Award expressly ruled out the 'issues or claims that may exist between Epic and RichWave,' it was the mutual understanding of both ALi and Epic at the time that the settlement was by no means a relief [*sic*] for Richwave or Wong, or anybody associated with that case. [¶] . . . [¶] The parties intended to strictly follow the Interim Award and never intended to release Richwave, Wong or related parties in this case as expressly stated by the Interim Award."

14

Insofar as the trial court concluded that the settlement agreement on its face barred Epic's claims, the court erred.

## II. *Extrinsic Evidence*

Based on its conclusion that the settlement agreement was "unambiguous on its face," the trial court applied the parol evidence rule to exclude any extrinsic evidence of the parties' intentions. As we have concluded, however, the agreement was patently ambiguous with respect to the intended sweep of the release clause. For that reason alone, it is proper to consult extrinsic evidence to determine the parties' intent. " ' " 'If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean?' " ' " (*Hartzheim*, *supra*, 153 Cal.App.4th at pp. 389-390.) And such an inquiry is appropriate even though the settlement agreement includes an integration clause declaring it to be "the final expression of the Parties' agreement."[12] (See *Rosenfeld v. Abraham Joshua Heschel Day School, Inc.* (2014) 226 Cal.App.4th 886, 897 ["when parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing, but extrinsic evidence is admissible to explain or interpret ambiguous language"].)

Here the most potent extrinsic evidence may be the parties' subsequent conduct with respect to the claims against Wong and Richwave. The relevance of such conduct was explained by the Law Revision Commission in 1978 when it amended the statute codifying the parole evidence rule to, among other things, highlight the admissibility of

---

[12] The integration clause itself invites a limiting interpretation by reciting that the contract "is the entire agreement of Epic and ALi *with respect to the subject matter covered, including the Interim Award, NDA and/or DSA*, herein." (Italics added.) Here again the parties' silence with respect to the still-pending claims against Wong and Richwave may be most readily explained by the unfortunate supposition that Epic's right to continue to prosecute those claims was too obvious to require explicit delineation—as would of course have been true but for the boilerplate release clause.

15

"course of performance" evidence: "[T]he course of actual performance by the parties is considered the best indication of what the parties intended the writing to mean. Subdivision (c) [of Code Civ. Proc., § 1856] thus definitely rejects (1) the premise that the language used has the meaning attributable to such language by rules of construction existing in the law rather than the meaning which arises out of the context in which it was used and (2) the requirement that a condition precedent to the admissibility of the type of evidence specified in the subdivision is an original determination that the language used is ambiguous." (14 Cal. Law. Revision Com. Rep. (1978) p. 153, reprinted in 20A West's Ann. Code Civ. Proc. (2007 ed.) foll. § 1856, p. 11.) "[C]ourse of performance" in this context means "[a] sequence of previous performance by either party after an agreement has been entered into, when a contract involves repeated occasions for performance and both parties know the nature of the performance and have an opportunity to object to it. *A course of performance accepted or acquiesced in without objection is relevant to determining the meaning of the agreement.*" (Black's Law Dict. (10th ed. 2014) p. 430, col. 1, italics added.)[13]

Here the parties' course of performance cannot be reconciled with an intention by either of them to release Wong and Richwave from their potential liability to Epic. First

---

[13] A more stringent rule is suggested by *In Re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 51-52, where the court held the subsequent conduct of parties to a settlement agreement inadmissible to show that they did not view certain pictures as "cartoons." The holding appears to rest on the premise that course-of-performance evidence is admissible only if the contract is first found to be ambiguous, or at least latently ambiguous. That premise flatly contradicts the Law Revision Commission's intention to "reject[] . . . the requirement that a condition precedent to the admissibility of . . . [course of performance] evidence . . . is an original determination that the language used is ambiguous." (14 Cal. Law. Revision Com. Rep. (1978) p. 153, reprinted in 20A West's Ann. Code Civ. Proc. (2007 ed.) foll. § 1856, p. 11.) Here of course we have found the agreement facially ambiguous with respect to the scope of the release, so course of performance evidence would be germane even under the narrower rule.

16

and most obviously, Epic made no attempt to end its suit against them, as their reading of the settlement agreement would have required it to do. Instead, a mere five weeks after Epic signed the agreement, its attorneys appeared for oral argument in this court in their successful effort to reinstate the suit against Wong and Richwave. About a month after that, Epic filed a request for dismissal "As to Defendant ALi Corporation Only." There is no indication that ALi ever challenged or even questioned any of this conduct, which may therefore be understood to embody the performance contemplated by the release clause, at least as it had any bearing on Wong and Richwave. (See *Bohman v. Berg* (1960) 54 Cal.2d 787, 795 [invoking "practical construction" rule under which "[w]hen one party performs under the contract and the other party accepts his performance without objection it is assumed that this was the performance contemplated by the agreement."].)

Nor does anything in ALi's subsequent conduct suggest that it intended the release to dispose of Epic's claims against Wong and Richwave. The record discloses two relevant incidents. The first occurred in March 2010, after Epic had refused to provide the remaining defendants in this matter with documents concerning the arbitration. In support of their joint motion to compel production, counsel for the codefendants declared that counsel for Epic had expressed no objection to producing the materials but cited "objections from ALi." The declarant had then contacted Jennifer Kao, in-house counsel for ALi, who said that "her superiors were not prepared to give permission" to disclose the materials, but that their concerns would be assuaged if production took place pursuant to a court order.

The second incident was described by Epic's president Yi-Ching Pao, who declared that in an attempt to secure a declaration in opposition to Wong and Richwave's motion for summary judgment, he too had contacted Ms. Kao. According to him, she exhibited "surprise[] that Richwave could get a hold of the settlesment agreement which

17

[was], to use her own words, 'a highly confidential document between Epic and ALi.' She said ALi had never disclosed the settlement agreement to Richwave and expressed her distain [*sic*] and anger over Epic's disclosing of the settlement agreement since she believes it had nothing to do with Richwave and Wong."[14]

These two declarations paint seemingly disparate pictures of ALi's willingness to disclose the arbitration and settlement materials to defendants, but they both support the inference that ALi had no intention or expectation that the settlement agreement would terminate Epic's claims against Richwave and Wong. Had ALi understood the agreement as defendants contend it should be understood, it might have been expected to lodge at least some form of protest upon learning that Epic was continuing this litigation in violation of that understanding. Instead, ALi's corporate counsel merely insisted that her client be left out of it.

Nothing before the trial court justified its conclusion that the settling parties intended to release Wong and Richwave from potential liability on Epic's claims against them.

## DISPOSITION

The judgment is reversed. The cross appeal from the order denying attorney fees is dismissed as moot.

---

**14** Defendants objected to this averment on multiple grounds. Their hearsay objection is well taken with respect to Kao's reported statement that ALi had never disclosed the agreement to Richwave. That was an extrajudicial assertion of historical fact, offered for its truth, and not within any apparent exception to the hearsay rule. (Evid. Code, §§ 1200-1390.) The remaining averments, however, appear admissible over a hearsay objection either as reports of Pao's own observations of Kao's emotional reaction or as statements of Kao's then-existing mental state, offered not to show the truth of anything she asserted but to show her own understanding of the agreement. (Evid. Code, § 1250.) Defendants also objected that the evidence was rendered irrelevant by the parol evidence rule, but as we have already explained, such evidence was admissible to determine the meaning given by the contracting parties to their agreement.

18

_____
                                     RUSHING, P.J.

WE CONCUR:

_____
        ELIA, J.

_____
        WALSH, J.[*]

*Epic Communications, Inc. et al. v. Richwave Technology, Inc. et al.*
**H037884**

_____

    [*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19

Trial Court:                                           Santa Clara County Superior Court
                                                       Superior Court No.:  1-06-CV076689


Trial Judge:                                           The Honorable Kevin E. McKenney


Attorneys for Plaintiffs and Appellants               Kao & Swope
Epic Communications, Inc., et al.:                     Chris Kao

                                                       Roubinian Law Group
                                                       Leon V. Roubinian


Attorneys for Defendants and Appellants               Finnegan, Henderson, Farabow, Garrett
Richwave Technology, Inc., et al.:                     & Dunner
                                                       E. Robert Youches
                                                       Zhenyou Yang
                                                       Robert F. McCauley
                                                       Ming-Tao Yang


*Epic Communications, Inc., et al. v. Richwave Techologny, Inc., et al.*
**H037884**