Filed 3/3/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BREATHE SOUTHERN CALIFORNIA, Defendant and Appellant, v. AMERICAN LUNG ASSOCIATION, Plaintiff and Respondent. | A160785 (Alameda County Super. Ct. No. RG05228892) |

Defendant Breathe Southern California (Breathe) appeals from the trial court's judgment in favor of plaintiff American Lung Association (ALA). Breathe disaffiliated from the ALA in 2006. The trial court concluded Breathe is required to share with the ALA the proceeds of three bequests made prior to disaffiliation. We disagree and reverse.

BACKGROUND[1]

The organization currently known as Breathe was formed in 1903 as the Los Angeles Society for the Study and Prevention of Tuberculosis. Subsequently, the organization, which became known as the American Lung Association of Los Angeles County, affiliated with the national organization, ALA, and a statewide "Constituent Association," the American Lung

---

[1] Portions of this background are taken from this court's prior nonpublished opinion in *Am. Lung Ass'n v. Am. Lung Ass'n in Cal.* (Dec. 8, 2017, A147428) (*ALA I*).

Association in California (ALAC).[2] In 2006, through a consent judgment, the American Lung Association of Los Angeles County disaffiliated from the ALA and ALAC and was renamed Breathe.[3]

The Affiliate Agreement

Prior to disaffiliation, Breathe entered into annual affiliate agreements with ALAC, which entered into similar agreements with other affiliates, as well as a "Constituent Agreement" with the ALA. The parties agree the last such agreement between Breathe and ALAC was dated July 1, 2004 and ran through June 30, 2005 (Affiliate Agreement). In section F, the Affiliate Agreement provided for "income sharing" between Breathe and ALAC, but specifically exempted various categories of income from sharing. As relevant to this case, section F states, "ALAC and the Affiliate agree that in order to achieve the common purpose and program of ALAC and its affiliates, all income received by ALAC and its Affiliates shall be shared in the manner specified in Section G hereof, *except for the matters excepted from income sharing* by the provisions of Paragraph 13 of the Constituent Agreement, that is, *funds restricted in writing by the donor, not later than the date of donation, to exclude or limit sharing, such restriction not having been invited by the donee association. . . .* All income to be shared pursuant to this paragraph is hereafter referred to as 'shareable income.' Upon request Lung Associations

---

[2] According to the ALA, in 2017, ALAC was dissolved and succeeded by the ALA.

[3] The organization's name was first changed to Breathe California of Los Angeles County and then, according to Breathe, it changed its name to Breathe Southern California in 2020. For convenience, this decision refers to appellant as Breathe, even in relation to events that occurred while it was still called the American Lung Association of Los Angeles County.

shall provide documentation for income and receipts not shared." (Italics added.)

The July 2004 constituent agreement between the ALA and ALAC contains a description of income excluded from sharing that is identical in all relevant respects. The ALA drafted the relevant language in section F of the Affiliate Agreement and required that it appear in all constituent and affiliate agreements.

Disaffiliation and the 2006 Consent Judgment

The ALA underwent a reorganization in late 2004 and early 2005. In a declaration, the ALA's Chief Operating Officer described it as "an effort to streamline the existing three levels of lung associations down to two." Breathe's President and CEO averred in a declaration that the "ALA demanded that [Breathe] transfer its assets and relinquish control to the national organization." The affiliate refused and decided to disaffiliate. Subsequently, in summer 2005, the ALA sued ALAC and its affiliates, including Breathe, for trademark infringement and related causes of action.

In January 2006, the parties settled the litigation and the Alameda County Superior Court granted a joint motion to approve a consent judgment (Consent Judgment). Under the Consent Judgment, certain affiliates agreed to merge into ALAC, while others (including Breathe) disaffiliated and agreed to change their names. The parties agreed to a process for settling their outstanding accounts, including calculation of income remaining to be shared.

At issue in *ALA I*, *supra*, A147428, was paragraph 4(m) of the Consent Judgment, which governs the treatment of bequests. In particular, paragraph 4(m)(ii) relates to bequests created before or within three months after the Consent Judgment's December 31, 2005 "Financial Closing Date."

3

Under the Consent Judgment, a bequest created during the specified timeframe shall be treated as an asset of an independent affiliate, like Breathe, if the bequest named American Lung Association of Los Angeles County (or similar designation) or if the donor was domiciled in Breathe's territory prior to disaffiliation.

That a bequest is to be "treated as an asset" of a former affiliate like Breathe does not mean the bequest need not be shared with ALAC (succeeded by the ALA). The second sentence of paragraph 4(m)(ii) of the Consent Judgment provides, "Any Bequest or Planned Gift falling within the terms of this paragraph *shall be subject to sharing as Shareable Income under the affiliate agreement* between the Independent Affiliate and ALAC covering the period July 1, 2004 to June 30, 2005, and the governing constituent agreement between ALA and ALAC." (Italics added.) The Consent Judgment defines "Shareable Income" as "those income and receipts subject to income sharing as provided in the governing constituent agreement between ALA and ALAC and the governing affiliate agreement between ALAC and each Independent Affiliate."

The 2010 Motion to Enforce the Consent Judgment

In 2010, a group of four former California affiliates, including Breathe, filed a motion to enforce the Consent Judgment. According to the motion, it was motivated by suspicions that the ALA and ALAC had failed to inform the former affiliates of shareable bequests. The motion sought an order requiring the ALA and ALAC to, among other things, treat shareable bequests as assets of the former affiliates and to disclose information about bequests that the ALA or ALAC deemed non-shareable.

In relevant part, the trial court's July 2010 order on the motion required that the parties treat bequests "as assets" of the former affiliates

4

when they fell under paragraph 4(m)(ii) of the Consent Judgment and concluded that information need not be shared regarding bequests outside the scope of the paragraph.

The 2015 Motion to Enforce the Consent Judgment

Over four years later, in January 2015, ALAC filed the motion to enforce the Consent Judgment that is the subject of the appeal in *ALA I*, *supra*, A147428, and the present appeal. Among other things, ALAC sought an order compelling Breathe to share three bequests: the McNamara bequest, the Carsten bequest, and the Brunner bequest. All three bequests were created but not distributed before the Consent Judgment.

The McNamara bequest was created in November 2003, via a trust instrument gifting funds to the "American Lung Association of California, for use at its Los Angeles County affiliate." In January 2007, Breathe informed ALAC by letter of its receipt of a distribution from the McNamara bequest. Breathe did not share any distributions from the McNamara bequest.

The Carsten bequest was created in 1997; Ms. Carsten was domiciled in Los Angeles County. Pursuant to the Consent Decree, the bequest became an asset of Breathe. The bequest provides for distribution of funds "to the American Lung Association for the purpose of establishing a perpetual fund to be known as the DON MARLIN and DR. MARY E. CARSTEN MARLIN fund. The income of this fund shall be used in the discretion of the Board of Directors of the American Lung Association, for one or more postdoctoral fellowships each year for research primarily in the area of bronchial asthma. The principal of this fund shall be held perpetually and shall be invested by the Board of Directors to the American Lung Association." The President and CEO of Breathe averred in a November 2015 declaration "that [Breathe]

5

determined that the Carsten [b]equest was restricted in writing by the donor to exclude or limit sharing because it specifies the creation of a single fund."

The Brunner bequest was created in May 1992. It provides for a distribution of funds to "The AMERICAN LUNG ASSOCIATION OF LOS ANGELES COUNTY, Los Angeles, California, to be used to establish the ERNEST BRUNNER AND IRENE BRUNNER FAMILY FUND, which fund is to be used exclusively for research relating to the causes and prevention of lung disease." The President and CEO of Breathe averred that the organization "determined that the Brunner [b]equest was restricted in writing by the donor to exclude or limit sharing because the donor writing specifies 'a fund for research.'"

To resolve the motion to enforce the Consent Judgment, the parties stipulated to the appointment of a referee under Code of Civil Procedure section 638. In October 2015, following a hearing, the referee issued a decision compelling Breathe to share income from the McNamara, Carsten, and Brunner bequests, regardless of any donors' intent to restrict sharing. The referee rejected Breathe's contention that the Consent Judgment was meant to continue the parties' practice as it existed before disaffiliation. The decision directed Breathe to pay ALAC its share of the three bequests, as well as attorney fees. In January 2016, the referee concluded that a 1 percent-per-month late fee specified in the Affiliate Agreement applied to the bequests at issue.

This court reversed in *ALA I*, *supra*, A147428, concluding the exceptions to sharing in section F of the Affiliate Agreement applied under the Consent Judgment. We remanded for a "determination of whether the three Bequests at issue are restricted within the meaning of [the] Affiliate Agreement." (*Ibid.*)

6

<u>Proceedings on Remand</u>

On remand, the trial court ruled in favor of the ALA, concluding the restricted funds exception in section F of the Affiliate Agreement was ambiguous and interpreting it to require "clear language" by the donor, such as "donor does not want this bequest shared with the national American Lung Association or the State constituent." Under this interpretation, the trial court held the three bequests at issue are shareable.

The present appeal followed.[4]

## DISCUSSION

I.  *The Evidence Presented Below and the Trial Court's Ruling*

The ALA's first witness was Martha Bogdan, chief executive officer of the ALA's Florida constituent office and previously executive director of the Delaware constituent office. She testified that those organizations had always shared their bequests with the ALA. The "income-sharing policy" was uniform across the country because the agreements were based on a "template." She attended annual conferences of executives; the "shareability of bequest income" was a topic of discussion, although not a regular topic. She testified she had never seen a "bequest with gift language that referred to an affiliate," as the McNamara bequest does. On cross-examination, Ms. Bogdan admitted she had no involvement in negotiating the Affiliate

---

[4] The trial court issued a tentative decision in November 2019, and Breathe filed a list of controverted issues and a request for a statement of decision in December. The court found Breathe's filing was untimely. Although Breathe disputes that finding, it does not present the correctness of the finding as an issue on appeal. We also note that, on November 5, 2021, Breathe requested that this court take judicial notice of the definitions of various words used in the various writings at issue in the present case. The request is denied because consideration of the definitions is unnecessary to resolution of the appeal.

7

Agreement, and she had never communicated with Breathe about the terms of the Agreement. She also admitted she had never considered whether a bequest was non-shareable under the restricted funds exception.

The ALA's second witness was Harold Wimmer, the ALA's President and CEO. He had also held other positions with ALA affiliates and constituent offices. He did not remember ever not sharing a bequest when he worked at affiliate and constituent offices. The ALA's "shared income policy" was discussed at the annual meetings of executives. The ALA's policy was that bequest revenue was shareable. On cross-examination, Mr. Wimmer acknowledged that, under the restricted funds provision in the Affiliate Agreement, "if the donor intended the gift not to be shared . . . it should not be shared." Mr. Wimmer had no involvement in negotiating the Affiliate Agreement, and he had never communicated with Breathe about the shareability of bequests prior to entry of the Consent Judgment in 2006. Regarding the McNamara bequest, he testified he was "surprised that it was written in such a way that to be used by the Los Angeles affiliate. Because . . . our donors are not really aware of that structure, that Los Angeles was an affiliate."

The ALA's next witness was Bill Pfeifer, the ALA's executive vice president for governance and strategic initiatives. He previously worked at a Florida affiliate and constituent offices in Oklahoma and Arizona. Mr. Pfeifer testified he had never disputed the sharing of income when he worked at the Florida affiliate and the Arizona constituent office. The language in the Affiliate Agreement on restricted funds "was the standard language in all

8

the agreements across the country." The ALA's "shared income policy" was discussed at the annual meetings of executives.[5]

Finally, the ALA presented the videotaped deposition testimony of Robert Churchill, its former general counsel. Mr. Churchill testified the affiliate agreements were "uniform across the country," as required by the ALA's "policy manual." He explained, "Every constituent [and affiliate] signed with ALA an agreement in identical form, the sole exception being that addendums were permitted provided the addendums did not contain provisions which contradicted any portion of the standard agreement." The restricted funds provision was already in the standard agreement when Mr. Churchill's firm began representing the ALA in 1986, but his firm recommended that the ALA add the language, "such restriction not having been invited by the donee association."

Mr. Churchill testified his firm advised the ALA regarding the shareability of bequests because the organization "frequently came up against situations where donations were withheld by the local association." He testified Breathe (during the period when it was the American Lung Association of Los Angeles) was among a group of affiliates "who constantly questioned the shareability of gifts." But he did not testify regarding the specifics of any particular disputes. Mr. Churchill opined that a bequest could be considered restricted "if and only if it had a provision in the gift itself stating that the monies were not shareable with the national organization" or if the donation was not shareable "as a matter of law." He did not testify that interpretation was shared with Breathe. On questioning

---

[5] Mr. Pfeifer also testified about two bequests received by Breathe California of Golden Gate Public Health Partnership, another former ALA affiliate.

from Breathe's counsel, Mr. Churchill acknowledged that "[d]onor intent is premier."

Breathe presented the testimony of Enrique Chiock, who served as President and CEO of Breathe from 1995 through 2017. Mr. Chiock did not recall any discussions with the ALA, any constituent offices, or any other affiliates about the restricted funds exception, and the ALA never said a donor had to use language such as "sharing is prohibited" in order for the restricted funds exception to apply. His understanding of the provision was, "if the purpose of the gift cannot be accomplished if shared, then [the gift is] non-shareable." With respect to the McNamara bequest, the ALA never asserted it had a right to share income from the bequest, until this action.

In June 2020, the trial court issued its ruling. The court found that the ALA's witnesses were credible, but they failed to present "any clear guidelines on how one is to determine whether or not a 'bequest' is shareable or not with the national or state organization." The court found the testimony of Breathe's Mr. Chiock regarding "how he determined whether or not a 'bequest' was shareable . . . to be vague, confusing, contradictory, self-serving and without much foundation." The trial court concluded the restricted funds exception in the Affiliate Agreement is ambiguous, observing it was "shocked that the types of disputes which brought this matter to this [c]ourt have not been more prevalent throughout the [c]ourts of our country."

Ultimately, the trial court determined that a bequest is only restricted to exclude or limit sharing, within the meaning of the Affiliate Agreement, if it contains "clear language" such as " 'donor does not want this bequest shared with the national American Lung Association or the State constituent.' " The court did not reference any extrinsic evidence supporting that interpretation. It appears the interpretation was entirely dependent on

the general "clear and strong mandate to share income" among the ALA entities.

The trial court then turned to the three bequests at issue. It concluded each bequest was shareable because the bequests did not have "language that 'excludes or limits' <u>the sharing of income</u> between the [ALA] entities." Regarding the Carsten and Brunner bequests, each of which direct the creation of "a fund," the trial court stated that multiple ALA entities could carry out that intent, without recognizing that the creation of multiple funds might undermine donor intent. Regarding the McNamara bequest, the court also stated, "[t]his bequest identifies where the gifted funds are to be used, that is, at the Los Angeles affiliate. The language does not say 'by' the Los Angeles County affiliate." The court's decision does not explain how the ALA could use its share of the funds at the Los Angeles affiliate (that is, Breathe) after disaffiliation.

II.    *The Trial Court Erred in Interpreting the Affiliate Agreement*

Where, as here, the trial court's interpretation does not turn on " 'the credibility of extrinsic evidence,' " the interpretation of the Affiliate Agreement is " 'subject to de novo review.' " (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 520.) That includes the determination whether the restricted funds provision is ambiguous—that is, " 'reasonably susceptible' " to two different meanings. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) "[W]here ' "contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further." ' " (*R.J. Reynolds*, at p. 524.) " 'If the contract is capable of more than one reasonable interpretation, . . . it is the court's task to determine the ultimate construction to be placed on the ambiguous language by applying the standard rules of interpretation in order

11

to give effect to the mutual intention of the parties [citation].' " (*Id.* at pp. 524–525.)

Under the Affiliate Agreement, Breathe is required to share except for "funds restricted in writing by the donor . . . to exclude or limit sharing." The trial court concluded that, for this restricted funds exception to be applicable, the donor must use express language such as " 'donor does not want this bequest shared with the national American Lung Association or the State constituent." Breathe argues that no particular language is required; instead, Breathe contends funds are restricted "to exclude or limit sharing" "if either the donor intended its gift to stay with an affiliate or if the result of the restrictive language was incompatible with sharing between entities."

Although the ALA argued in favor of the trial court's interpretation in its brief on appeal, the ALA conceded at oral argument that any bequest incompatible with sharing is within the scope of the restricted funds exception. The concession is appropriate, because contracts must be interpreted to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) It is undisputed the purpose of the restricted funds provision is to effectuate donor intent—that is, to ensure that bequests are not shared where it would be contrary to the donor's intent to do so. ALA President and CEO Mr. Wimmer testified donor intent was "paramount" and former ALA general counsel Mr. Churchill confirmed "[d]onor intent is premier."

Even assuming the restricted funds provision is reasonably susceptible to the trial court's interpretation, it is clear that Breathe's interpretation is most likely to effectuate donor intent, because it focuses our attention directly on an examination of that intent, while the trial court's interpretation could easily frustrate that intent. As the court and at least one of the ALA's witnesses acknowledged, donors are unlikely to be aware of

12

the possibility of sharing. Accordingly, there is little reason to believe most donors would use express language referencing sharing, even if the language of the bequest makes it clear the donor intended for the entirety of the funds to go to the affiliate. Because Breathe's proffered interpretation better serves the clear purpose of the restricted funds exception, we would adopt Breathe's interpretation even if we were to conclude the language is ambiguous.[6]

Finally, even if there were any remaining uncertainty regarding the construction of the Affiliate Agreement, we would resolve the ambiguity against the ALA. It is undisputed that the ALA drafted the Agreement and required all affiliates to sign it. It is "a 'well established rule of construction' that any ambiguities must be construed against" the drafter, where the uncertainty cannot be resolved by other rules of contract interpretation. (*Sandquist v. Lebo Auto., Inc.* (2016) 1 Cal.5th 233, 248; see also Civ. Code, § 1654; *Mayhew v. Benninghoff* (1997) 53 Cal.App.4th 1365, 1370 [the rule "applies with even greater force when the person who prepared the writing is a lawyer"].) Accordingly, we adopt Breathe's reasonable interpretation of the

---

[6] The ALA points to the testimony of its witnesses that the affiliates and constituents they were associated with (not Breathe) always, or almost always, shared bequests. But that evidence is irrelevant because it is only evidence of how *those other affiliates* interpreted the restricted funds exception; none of the testimony is evidence of how the signatories to Breathe's Affiliate Agreement interpreted the exception. (See *Epic Commc'ns, Inc. v. Richwave Tech., Inc.* (2015) 237 Cal.App.4th 1342, 1355.) In any event, the only specific evidence regarding the frequency that bequests were shared gives reason to be skeptical of that testimony. Breathe presented evidence of a May 2002 letter from the ALA to Breathe (when it was still called American Lung Association of Los Angeles) reporting that, "Of the 119 bequests processed through the national office during [1999–May 2002], twenty-three were non-shareable bequests. Fifteen of these were designated by the donor for national office purposes; eight were designated for local purposes."

restricted funds exception to mean that funds are restricted "to exclude or limit sharing" if the language of the bequest reflects the donor's intent that its gift stay with an affiliate or if the result of the restrictive language is otherwise incompatible with sharing between entities.

III.    *The Trial Court Erred in Concluding the Bequests Were Shareable*

Because our interpretation of the restricted funds exception in the Affiliate Agreement turns on donor intent as reflected in the particular terms of a bequest, we now turn to an examination of the three bequests at issue. " 'The basic rule in the interpretation and construction of any will is that the intention of the testator must be carried out as nearly as possible. [Citations.]  In ascertaining the testator's intent, courts employ an objective test: the intention to be determined is that which is *actually expressed* in the language of the will. . . .  Another fundamental rule of the interpretation and construction of wills requires that every word should be considered and given some effect, if possible.  [Citation.]  "The words of a will are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative . . . ."  [Citation.]  Moreover, the words used in a will must be given their ordinary, commonsense interpretation.' "  (*Schwan v. Permann* (2018) 28 Cal.App.5th 678, 685.)  Because there is no extrinsic evidence regarding the testators' intent we exercise our independent judgment in interpreting the three bequests at issue.  (*Ibid.*)

As noted previously, the trial court's primary reason for concluding each bequest was shareable was because none included express "language that 'excludes or limits' the sharing of income between the American Lung Association entities."  We have rejected the court's interpretation of the restricted funds exception as requiring express language prohibiting

14

"sharing." As explained below, absent that rationale it is a straightforward matter to conclude that the plain language of the bequests restricts sharing.

The McNamara bequest left the residue of Alberta Patricia McNamara's estate to several Los Angeles charities, including the "American Lung Association of California for use at its Los Angeles County affiliate." Breathe was the ALA's only Los Angeles affiliate before disaffiliation in 2006 and the ALA has had no Los Angeles affiliate since then. The ALA suggests that sharing the bequest would not frustrate the testator's intent because the ALA "complied with donor intent by designating its shareable portion for use in Los Angeles." But the plain language of the bequest dictates that the funds be spent *at Breathe*. It would be inconsistent with the donor's intent for a portion of the funds to be spent *in Los Angeles* by the ALA. Accordingly, the bequest clearly restricts sharing within the meaning of the Affiliate Agreement.

The Carsten and Brunner bequests both dictate the bequests should be used to establish a *singular*, named fund. The Carsten bequest directs distribution of the residue "to the American Lung Association for the purpose of establishing a perpetual fund to be known as the DON MARLIN and DR. MARY CARSTEN-MARLIN Fund" and specifies the "income of this fund shall be used . . . for one or more postdoctoral fellowships each year for research primarily in the area of bronchial asthma." The Brunner bequest is to "The AMERICAN LUNG ASSOCIATION OF LOS ANGELES COUNTY . . . to be used to establish the ERNEST BRUNNER AND IRENE BRUNNER FAMILY FUND, which is to be used exclusively for research relating to the causes and prevention of lung disease." The ALA argues that sharing those

15

bequests would not frustrate the testators' intent.[7]  As to the Carsten bequest, it points out it established a fund and used the interest "to support postdoctoral fellows conducting research through the Airways Clinical Research Center Network program, which in particular looks at protocols around pediatric Asthma."  As to the Brunner request, it states it established a fund "and devoted it to research in the prevention of lung disease."  But the ALA fails to explain how the establishment of *multiple* funds—one at Breathe and one at the ALA, and a third at ALAC prior to consolidation of ALAC and ALA—is consistent with the testators' intent.  The ALA effectively argues the intent will be *substantially* satisfied, because its funds pursue the specified types of research.  But our obligation is to interpret the bequest to carry out the testators' intent "as nearly as possible." (*Schwan v. Permann, supra,* 28 Cal.App.5th at p. 685.)  Here, that is the creation of a single named fund as to each bequest.  The ALA provides no authority or basis to conclude that the specification of a singular fund was not intentional.[8]

In conclusion, the plain language of the McNamara bequest indicates that the testator intended the funds would be used entirely at ALA's Los Angeles affiliate, now called Breathe.  And the plain language of the Carsten

---

[7] There is no dispute the Carsten and Brunner bequests are assets of Breathe under the Consent Judgment.

[8] Breathe argues "[t]here are practical reasons why the creation of *one* fund was important."  It is unnecessary to consider the possible reasons for the limitation in the Carsten and Brunner bequests; it is sufficient that we are required to comply with the plain language of the bequests as nearly as possible.  Nevertheless, by way of example, we note that Breathe argues that the ALA's share of the Carsten bequest would generate insufficient funds to support a fellowship, as the donor intended.  Also, because we conclude the bequests are not shareable, we need not consider Breathe's argument that the trial court erred in refusing to permit it to assert a statute of limitations defense as to the McNamara bequest.

16

and Brunner bequests indicates the testators intended the income of each bequest would be used to create a singular fund, and it is undisputed the bequests are assets of Breathe. Sharing the bequests with the ALA is incompatible with those intentions, which means sharing is not required under the restricted funds exception in the Affiliate Agreement.[9]

## DISPOSITION

The trial court's judgment is reversed. The matter is remanded for entry of judgment in favor of Breathe, including consideration of Breathe's request for restitution with interest and any request for attorney fees and costs. Costs on appeal are awarded to Breathe.

---

[9] Breathe requests that this court, in addition to reversing the trial court's judgment, also "order[] restitution of the amount Breathe paid ALA plus the statutory interest rate of 10%," "deem Breathe the prevailing party," and "either set[] a briefing schedule for Breathe's motion for fees and costs, or remand[] for the trial court to decide that motion." Breathe clearly has prevailed on the merits, but all the other requested orders are matters properly addressed by the trial court on remand.

_____
SIMONS, J.

We concur.

_____
JACKSON, P. J.

_____
WISEMAN, J.[*]

(A160785)

_____

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18

**Breathe Southern California v. American Lung Association (A160785)**

Trial Judge:       Hon. Stephen M. Pulido

Trial Court:       Alameda County Superior Court

Attorneys:

      Meyers Nave, Sebastian Kaplan; Fenwick & West, Kathryn J. Fritz and Rebecca A.E. Fewkes for Defendant and Appellant.

      Martorell Law, Eduardo Martorell, Jean-Paul Leclercq; Law Office of Tara L. Cooper, Tara L. Cooper; Benedon & Serlin, Gerald M. Serlin and Judith E. Posner for Plaintiff and Respondent.